Whaeey, Chief Justice,
delivered the opinion of the court:
This is one of eight suits brought pursuant to a special act of Congress approved January 20, 1936 (49 Stat. 2209), entitled “An Act to confer jurisdiction upon the Court of Claims to hear, determine, and render judgment upon the claims of F. Mansfield and Sons Company, and others,” which reads as follows:
That jurisdiction is hereby conferred upon the Court of Claims of the United States to hear, determine, and render judgment upon the claims of the F. Mansfield and Sons Company, * * * for a compensation for damages sustained by said claimants by reason of the injury to oysters on beds operated under perpetual franchises or leases from the State of Connecticut and injury to such oyster beds, caused by officers, employees, and/or agents of the United States in performing dredging work in the harbor of New Haven, Connecticut, in 1933, 1934, and 1935: Provided, That suit hereunder shall be instituted within four months from the date of the approval of this Act, and proceedings therein shall be had in the same manner as in the case of claims over which the Court of Claims has jurisdiction, by virtue of section 145 of the Judicial Code, as amended.
Plaintiff held by perpetual franchises or leases from the State of Connecticut oyster lots in or near New Haven Harbor, Connecticut, and sues to recover damages for the destruction of large quantities of seed oysters and the value of the oyster beds on which they were planted. Damages are claimed to have resulted from the dredging of the channel at New Haven Harbor by the defendant between November 1, 1933, and June 9, 1935.
The contention is made that the special act admits negligence on the part of the Government. The special act simply gives the plaintiff the right which it would have had if it were bringing a suit against a private individual or corporation. It is practically in the same terms as the Jurisdictional Act of 1935, 49 Stat. 1049, which was incor *414 porated in the Rivers & Harbors Bill of that year as Section 13 and which confers upon the Court of Claims “jurisdiction to hear and determine claims for damages to oyster growers upon private or leased lands or bottoms arising from dredging operations and use of other machinery and equipment in making such improvements.” The plaintiff is given by the special act the right to be heard in Court on an alleged tortious act on the part of the defendant and its agents. This right would not have been accorded plaintiff under the general jurisdiction of this court. Actions sounding in tort are not cognizant under Section 145 of the Code. This section has been modified so far as oyster growers are concerned where dredging operations by the Government are involved, as provided for in the Act of 1935, supra.
It has been too well established to need a citation of authorities that special acts are always strictly construed. In each case the court will, from the language of the act, the nature of the case, and the surrounding circumstances, endeavor to ascertain and carry out the legislative intent. Braden v. United States, 16 C. Cls. 389.
The report of the House Committee on Claims, H. R. 1387, 74th Congress, First Session, which the Senate Committee Report incorporated verbatim shows conclusively that Congress, in the act, did not confess liability but intended that the plaintiff should establish negligence on the part of the United States as the proximate cause of the damages. The Committee Report states:
It appears to your Committee that the foregoing constitutes at least a prima facie claim against the United States, and it is our opinion that the claimants are entitled to this right of suit. The bill is merely jurisdictional, and no recovery can be had therewnder without proof of Mobility on the part of the United States and subsequent damages resulting to the claimants. [Italics ours.]
It is necessary for the plaintiff to prove its case by showing that the manner and method pursued by the Government were negligent and the proximate cause of its damages.
Under authority of the Rivers & Harbors Act of July 1930, 46 Stat. 918, 934, an examination and survey of the harbor had been made by the Engineer Corps, United States *415 Army, which, recommended a depth oí 25 feet below the mean low water level in the main channel instead of the 20 feet theretofore authorized and dredged by the defendant. On August 30, 1935, after the dredging had been completed, Congress under the Elvers & Harbors Act specifically adopted the recommendations of the survey. Following the enactment of the National Industrial Eecovery Act in June 1933, 48 Stat. 195, the deepening of the channel of the New Haven Harbor was adopted as a public work under Section 204 of Title 2 of the Act and money was allotted to carry out the project.
The harbor at New Haven contained about 7,500 acres, two-thirds of which were used in November 1933, for the cultivation of seed oysters and had been so used for many years prior thereto. The bed of the harbor had been surveyed and divided into lots and was held by private persons under “perpetual licenses” or leases from the State of Connecticut through its Shellfish Commission, which had been created by statute for the purpose of regulating, protecting, and fostering shellfish industries in the waters of the State of Connecticut. The channel began on the northern tip of lot 324 in the outer part of the harbor and extended north for a distance of approximately 5 miles from the wharves in New Haven. The southern or lower portion of the channel, which was designated and marked by the Government as Section I, was 16,650 feet in length and 400 feet wide. The upper portion, known as Section II, extended 9,700 feet and was 500 feet wide except for a short distance near the northern end where it widened to 1,000 feet, narrowing to 500 feet as it approached the wharves. The entire channel was deepened to 25 feet below mean water level.
Oyster lots operated by plaintiff were located in the bed of the channel and extended to varying distances on both sides thereof. On November 1, 1933, defendant commenced dredging operations in the southern portion of Section I, using a seagoing hopper type of dredge. At all times this type of dredge was used until the work was finally completed in June 1935.
The seagoing hopper dredge used by defendant contained a centrifugal pump or pumps to which was attached a *416 large adjustable pipe extending below the vessel to the surface to be dredged. Attached to this pipe at its lower end is a “drag” or. “suction-head” which, operating on a principle similar to that utilized in electric vacuum cleaners, draws material off the bottom as the suction-head is dragged over the surface and discharges it in bins within the vessel. During operation a large quantity of water is drawn into the bins and continuously overflows, this overflow containing substantial amounts of mud, silt, and other solid matter.
Quantities of mud and silt were placed in suspension in the water as a result of agitation caused by dragging the suction-head over the bottoms and as a result of the constant overflow of water containing mud and silt from the bins. This suspended material was carried by tidal currents and settled upon harbor bottoms at distances from the dredge which varied with the weight of the material and the strength of the currents carrying it. In this manner mud and silt were deposited upon oyster lots in New Haven Harbor and quantities of seed oysters were destroyed and areas of lots were ruined for oyster cultivation.
In previous dredging in New Haven Harbor the War Department had used a dipper or clamshell type dredge, consisting of a scoop, which was lowered to the bottom, filled with solid material, raised and emptied into scows anchored beside the dredge. No serious damage to seed oysters and oyster beds adjacent to the area of operation had occurred with this type of dredge.
Plaintiff contends that the destruction of oysters and oyster beds was the proximate result of defendant’s negligence, and relies to show negligence upon the grounds that defendant failed to give timely notice when the work was to commence and that defendant used a seagoing hopper dredge in preference to that of another type.
A suction dredge, because of its very method of operation, necessarily would cause great agitation on the bottom of the channel and, in this manner and through the overflow from the bins, would place quantities of solid matter in suspension in the water, endangering the adjacent property. *417 Under these circumstances the use of a suction dredge in the channel of New Haven Harbor constituted negligence on the part of defendant.
Plaintiff, on the other hand, owed to defendant the duty to avoid all possible loss and, after notice, not to aggravate the damage by failure to take affirmative steps in protection of its property. Plaintiff, of course, could do nothing to protect the beds from mud placed in suspension by defendant’s dredges and it is contended that notice by defendant that a suction type of dredge was to be used in the channel, was not sufficiently timely to enable plaintiff to remove oysters from beds in the harbor. With respect to certain lots located near the portion of the channel initially dredged the notice was unreasonable.
Upon receiving from the Office of the District Engineer a letter dated September 6, 1938, the first official notification that the channel was to be dredged, plaintiff removed oysters from the channel bed and no claim is made for the destruction of oysters within the limits of the channel. This letter did not state that a suction dredge would be used. In view of past experience with dredging in the harbor, it was reasonable for plaintiff not to anticipate injury to oysters beyond the channel limits and not to attempt to remove them upon receipt of the letter of September 6. The first notice that the channel improvement was to be performed with a suction type of dredge was contained in a letter from the Office of the District Engineer dated October 31, 1933. Actual dredging began immediately thereafter on November 1, 1933.
It is the contention of the plaintiff that it was impossible to remove the oysters from the beds within 2,000 feet of the channel as requested in the October letter for the reason that the notice was inadequate and for the additional reasons that equipment was lacking, other bottoms could not be procured on which to place the oysters, and because of the lack of capital. The evidence does not sustain the last three reasons. The first reason is sustained in part so far as Section I is concerned. Dredging in this section was well ever a mile from the lots in the northern part of the harbor *418 which were contained in Section II and the plaintiff had timely notice to remove the oysters in whole or in part from the lots in the area of the second section. The dredging in the second section was not commenced until April 1934. The plaintiff made no attempt to overcome these obstacles in mitigation of damages, although the progressive destruction of the oysters was known to it. In fact, no attempt was made to mitigate damages in the destruction of seed oysters with the exception of the removal of the seed oysters from the channel.
It is admitted that the plaintiff succeeded in procuring equipment, capital, and other bottoms so as to remove the oysters from the channel beds. The channel was from 400 to 500 feet wide and 26,350 feet in length. The removal was accomplished in two months. Although this dredging took over two years, no other attempt was made to remove the oysters outside of the channel.
Plaintiff claims that its failure to attempt to remove oysters outside of the channel was due to the fact that it believed that the engineers in charge of the dredging could be induced to change the method by which the dredging was being done to the clamshell dredging method. This contention fails to carry conviction because of the repeated and continued refusals of the engineer officers to listen to such inducements and requests.
During the months of December and January 1933 and 1934, winter conditions prevented and retarded oyster removals but the remainder of the time operations could have been continued if an earnest effort had been made to mitigate the damages with the result that a partial and not total loss would have resulted.
It is contended by the defendant that the plaintiff did not possess a vested right in the title to the lots but operated under “perpetual franchises” from the State of Connecticut and therefore no recovery can be had for property which it did not own. This contention is based on the principle that the dominant right for navigation purposes to the bed of the river is in the defendant and therefore the State of Connecticut could not convey title to the lots. We do not regard this as necessary for a lengthy discussion. *419 It is sufficient to say that the special Act gives tbe right to compensation for damages sustained by reason of the negligent injury to “oysters on beds operated under perpetual franchises or leases from the State of Connecticut and injury to such oyster beds.” The Congress has given the right to recovery for injury to these lots held by “perpetual franchises” irrespective of what title the defendant may possess.
The whole suit is premised on the negligence of the defendant and, if there is no negligence, there can be no recovery.
What has been said above with reference to the destruction of the oysters by the method pursued in the use of the seagoing hopper suction dredges instead of clamshell dredges or dipper dredges, and the failure to give timely notice in which to remove «the oysters in mitigation of damages, is based on acts of negligence on the part of agents of the Government. The use of the seagoing suction dredge was an act of negligence which was the proximate cause of the destruction of the beds outside of the channel limits and the destroying of the seed oysters on these beds.
Claim is made for the destruction of oyster beds within the limits of the channel and recovery is sought for the value of these beds. The destruction of the beds within the channel was not the proximate result of defendant’s negligence and, regardless of how timely the notice the plaintiff may have received before the work was commenced and regardless of the type of dredge used by the defendant, it would have been impossible and impracticable to deepen the channel five feet or to any other greater or lesser depth without destroying the oysters and oyster beds on the channel bottom. No amount of due care could have overcome this condition, no length of notice could have obviated the destruction of these oyster beds when the dredging was for the purpose of deepening the channel. The authorized dredging necessarily involved destruction of the beds within the channel. The destruction was not from the failure of the defendant to perform the work in a reasonably prudent manner. The defendant has been guilty of no negligence in the manner and method pursued *420 with reference to the destruction of these beds and no recovery can be had.
In order to determine the extent to which the oysters and beds were being covered by the solid matter in suspension in the water, numerous and varied tests were made both by the plaintiff and the defendant, the former acting through the Shellfish Commission of the State of Connecticut and cooperating with the defendant in making some of these tests. The tests were made practically throughout the entire period of operation and at points along almost the entire harbor. The results of these tests undoubtedly show that substantial quantities of mud and silt were deposited upon the oyster beds by defendant’s dredging operations but they fail to establish the exact depths or the exact limits of the mud deposited directly and exclusively attributable to the defendant’s operations. The measuring devices were subject to a degree of inaccuracy and there was a large variance at distances far and near. The results of these tests were often confusing and contradictory. In certain instances there was more mud and silt in suspension when the dredge was not in operation than when it was. In other instances, certain depth tests made at the same time within a few feet of one another revealed marked differences in the amount of deposits measured. The varying directions and strength of the tidal currents in the harbor only partially explained these differences in the amount of the deposits.
It is impossible to satisfactorily calculate with any definite exactitude the amount of mud deposited on the lots, the number of lots actually affected in whole or in part, the number of oysters destroyed, and the number which could have been removed in mitigation of damages. It is impossible to fix a line beyond which it would have been reasonable for plaintiff to remove the oysters when it became apparent that they would be in danger. It is impossible to fix with any accuracy how far from the channel, where operations were being conducted, that the silt and mud extended. None of these quantities and areas can be ascertained with certainty or exactness.
The amount of damage cannot be determined with any degree of accuracy and finality. Even the values vary. *421 However, neither the fact that damages are difficult to ascertain nor that they cannot be calculated with mathematical accuracy constitutes a bar to recovery. Hetzel v. Baltimore & Ohio R. Co., 169 U. S. 26; Standard Oil Co. v. So. Pacific Co., 268 U. S. 146; Eastman Kodak Co. v. Southern Photo Materials Co., 273 U. S. 359; Story Parchment Co. v. Paterson Paper Co. et al, 282 U. S. 555.
All that is required is the allowance of such damage as, in the judgment of fair men, directly and naturally resulted from the injury sustained. There is no question that the plaintiff has suffered a loss through the negligent act of the Government in the method by which this work was performed and the failure to give timely notice in which to mitigate some part of the damage. Therefore, taking into consideration all the circumstances as disclosed by the evidence and allowing for all mud deposited on all the lots involved and occupied by the plaintiff, the value of these lots including the shells deposited thereon, the number of oysters destroyed, the extent of this destruction, the negligent dumping of mud upon the lots outside of the harbor, the value of the attempted reclamation of certain lots by the plaintiff and the labor and material expended thereon, and acting as intelligent and fair-minded men composing a jury, we arrive at a verdict for the plaintiff which will fully and reasonably compensate it for all the damage and injury to its property and holdings in the sum of $45,000.
Plaintiff claims interest from the date of destruction to the entry of judgment. This being an action in tort, no interest is allowable.
In Radel Oyster Company v. United States, 78 C. Cls. 816, 829, which was a case of tort, we held:
There is no taking of private property in this case which would entitle the plaintiff to just compensation under the Constitution. The special act gives a special right and limits the remedy to the amount of damages resulting from a special act of negligence on the part of an agent of the Government for which the Congress has assumed a common-law liability in this particular instance. In other words, it is a claim founded on a special law of Congress waiving the legal immunity of the defendant and creating what was damnum absque injuria into a cause to be damnified. The rule in such *422 cases is that no interest is allowed. This case falls within the doctrine laid down in United States v. North American Co., 253 U. S. 330, and is to be distinguished from the power of eminent domain as was pointed out in Phelps v. United States, 274 U. S. 341.
See also United States v. Goltra, 312 U. S. 203.
Plaintiff is entitled to recover $45,000. It is so ordered.
MaddeN, Judge; JoNes, Judge; Littleton, Judge; and Geeen, Judge, concur.
ERNEST E. BALL (No. 43318)
In the case of Ernest E. Ball, Plaintiff, (No. 43318), the court in addition to the special findings set out first above made special findings also, as follows:
2. Plaintiff is a resident of New Haven, Connecticut, and has been engaged in the business of oyster farming for over 50 years.
* * $ # #
3^ # % *
Plaintiff was chiefly engaged in raising seed oysters.
# * ‡ *
11. After receipt of the letter of September 6, 1933, referred to in Finding No. 7, plaintiff who had oysters within the limits of the channel of the New Haven Harbor removed them. No claim is made in this suit for the destruction of any oysters within the limits of the channel.
‡ $ $ $ $
14. At the time of receipt of the letter of October 31,1933, Suggesting removal ■ of oysters within 2,000 feet of the channel, plaintiff was handicapped by lack of time, lack of capital, lack of equipment, and lack of bottoms on which to place oysters removed. Plaintiff had two oyster dredge boats, which were otherwise engaged and which were never used in removing oysters from any of his lots in New Haven Harbor after receipt of the notice of October 31, 1933, referred to in Finding No. 8. The plaintiff also owned a small boat operated by a tonger which removed approximately 3,000 bushels of oysters from lots beyond the chan *423 nel limits after receipt of the notice. Plaintiff at no time took steps to overcome the obstacles to removal and failed to remove any other oysters from beds located beyond the channel limits. Plaintiff had reasonable opportunity and means, under all the circumstances including the obstacles with which plaintiff was confronted, to remove the larger part of the oyster stock endangered by dredging operations.
$ H* $ $ $
23.Prior to, during, and since 1933, plaintiff has been the operator of oyster lots with acreage in New Haven Harbor as follows:

Lot. No. Aeres

43_ 56. 4
48_1 12
63_ 5. 9
65_ 25. 8
70_ 15.6
73_ 24.9
74_ 71
78_ 32. 2
80_ 34.7
91_ 12. 7
93_ 34
101_ 7. 6
104_ 5. 8
128_ 8. 3
142_ 1
Total_ 347. 9
During the years 1933 and 1934, plaintiff was the lessee of lot No. 151 containing 20 acres. The location of all these lots is shown on defendant’s Exhibit No. 3 and made a part hereof by reference.
24. Plaintiff was engaged in raising seed oysters on the lots referred to in Finding No. 23. Most of the acreage of these lots, located in the upper part of New Haven Harbor, lies in shoal water. The dredging in Section II of the channel was carried on chiefly during the summer and fall of 1934.
25. Plaintiff had oyster lot acreage outside of the New Haven Harbor on which he planted the seed oysters from his lots in New Haven Harbor.
*424 26. In the fall of 1933, plaintiff made a survey of his shoal water lots, Nos. 43, 63, 151, 48, 65, 70, 73, 78, and 80, to determine the quantity of oysters on these lots. In the fall of 1934, plaintiff made another survey of these lots to determine the quantity of oysters destroyed by defendant’s dredging operations.
27. Before the dredging began in 1933 the acreage and value per acre of the lots, parts of which were destroyed, were as follows:

Lot No. Value Acres per Acre

43 (east part) 28. 2_$50
48_ 12 _, 40
63_ 5.9 (2.5 acres lie within the channel)_ 40
65_ 25. 8 (4 acres lie within the channel)_ 50'
70_ 15. 6 (0.9 acre lies within the channel)- 75
73 (east part) 12. 5_1_ 60
74_ 71 (44 acres lie within the channel)- 60
78 (east part) 16.1_ 60
80 (east part) 17.4_ 60
93_ 34 (8 acres lie within the channel)_ 50
104_ 5.8_ 50
28.The proof is that plaintiff sustained substantial damages by reason of the destruction of oysters on his beds, operated under perpetual franchises from the State of Connecticut, and by reason of the permanent destruction of parts of such beds for oyster cultivation, due to the negligence of officers and agents of the United States in performing dredging work in the Harbor of New Haven, in 1933, 1934,, and 1935. The maj ority of plaintiff’s lots, upon which oysters were destroyed, are located in the northern part of the harbor in and adjacent to Section II of the channel where no substantial dredging occurred until April 1934. In most sections ample time was had for removal and in some sections the notice was not adequate and sufficient. The depth of the silt was not uniform and the amount deposited varied. It is impossible to accurately calculate the quantity of oysters destroyed and the acreage affected. Oysters and beds were destroyed and affected, some beds permanently, others only partially. No oysters in the bed of the channel were affected. It was impossible and impractical to deepen the channel by any method without affecting these beds.
*425 29. Considering all the evidence presented and taking into consideration all relevant circumstances, tbe court finds that because of defendant’s negligence plaintiff has sustained damages in the amount of $13,500.
The court decided that the plaintiff was entitled to recover.
Whalet, Chief Justice,
delivered the opinion of the court:
This suit arises under the Jurisdictional Act of January 20,1936, 49 Stat. 2209. The suit is for the recovery of damages to oyster beds and the destruction of seed oysters in New Haven Harbor, in the State of Connecticut.
The facts in the case are similar in most respects to those described in The F. Mansfield and Sons Company case, No. 43317, decided this day, and the legal principles are the same.
Plaintiff was the operator and lessee of certain lots in the New Haven Harbor, the larger part of which were in Section II and the dredging on which did not commence until April 1934. Plaintiff attempted to minimize his damages but only to a small degree.
There is no question that plaintiff has suffered damages through the destruction of his oysters and injury to his oyster beds. It is impossible with any degree of accuracy to arrive at the extent of the damage, the area actually covered by the mud, and the number of beds affected by the mud and silt. There can be no recovery for the lots or seed oysters lying in the bed of the channel.
As was shown in the opinion of the Mansfield case, supra, the fact that damages cannot be calculated with mathematical accuracy does not prevent us from making a fair estimate of the damages sustained by plaintiff in the same manner that a jury would under similar circumstances.
From all the facts and circumstances shown by the evidence, we find that the plaintiff sustained damages by reason of the negligent acts of the defendant in the amount of $13,500, for which sum judgment will be rendered in favor of the plaintiff. It is so ordered.
MaddeN, Judge; JoNES, Judge; Littleton, Judge; and Green, Judge, concur.
*426 N. P. STARBRANCH (No. 43319)
In tbe case of N. P. Starbranch, plaintiff (No. 43319), the court in addition to the special findings set out first above made special findings also, as follows:
2. Plaintiff is a resident of New Haven, Connecticut, and has been engaged in oyster farming for 50 years.
*. * * * *
Plaintiff is chiefly engaged in raising seed oysters.
% % Hí % #
11. The lot involved in this suit was not located within the limits of the channel and no claim is made by plaintiff for the destruction of any oysters within the channel limits.
14. At the time of receipt of the letter of October 31, 1933, suggesting removal of oysters within 2,000 feet of the channel, plaintiff was handicapped by lack of time, lack of capital, lack of equipment, and lack of bottoms on which to place oysters removed. Plaintiff at no time during dredging operations in the channel took steps to overcome these obstacles and failed to remove any oysters whatsoever from his bed. Plaintiff had reasonable opportunity and means, under all the circumstances including the obstacles with which he was confronted, to remove a part of the oyster stock endangered by dredging operations.
‡ ‡ ‡
23. Prior to, during, and since 1933, plaintiff has been the operator of lot No. 59 in New Haven Harbor, containing 5.4 acres and located opposite Section II of the channel. This lot is irregular in shape and its eastern boundary is from 600 to 700 feet west of the west edge of the channel. The location of this lot is shown on defendant’s Exhibit No. 3, which is made a part hereof by reference. The value of plaintiff’s lot in 1933, before the dredging began, was $75 per acre, making for the 5.4 acres a total of $405.
24. At no time during the dredging operations did plaintiff make any attempt to remove ail or any part of the oysters endangered by the dredging in New Haven Harbor to mitigate the damage.
*427 25. The proof is that plaintiff sustained damages by reason of the destruction of oysters on his bed, operated under perpetual franchise from the State of Connecticut, and by reason of the destruction of parts of such bed for oyster cultiva-' tion, due to the negligence of officers and agents of the United States in performing dredging work in the harbor of New Haven, in 1933,1934, and 1935.
26. Plaintiff’s lot upon which oysters were destroyed was located in the northern part of the harbor and adjacent to Section II of the channel where no substantial dredging-occurred until April 1934.
By reason of the manner in which the injury occurred and upon the evidence proferred, it is not possible to determine with exactness the quantity of oysters destroyed or the exact area of the lot ruined for oyster cultivation. Considering all the evidence presented and taking into consideration all circumstances, the Court finds that because of defendant’s negligence plaintiff sustained damages in the amount of $400.
The court decided that the plaintiff was entitled to recover.
Whalev, CMef Justice,
delivered the opinion of the court:
This suit was brought under the Special Jurisdictional Act of January 20, 1936, 49 Stat. 2209, and plaintiff is one of the claimants mentioned therein.
The principles of law set out in The F. Mansfield and Sons Company case, No. 43317, decided this day, are the same which are applicable to this case.
Plaintiff was the operator of one lot situate in the northern section of the harbor which was not dredged until April 1934. He made no attempt to remove any oysters in order to minimize his damage. Plaintiff’s lot was situate a considerable distance from the channel bed but within the 2,000-foot limit. The plaintiff suffered some damage.
The nature of the case makes it impossible to ascertain accurately the amount of injury sustained by plaintiff to his holding but this does not prevent us from making a fair estimate of the damage sustained by plaintiff in the sama manner that a jury would under similar circumstances.
*428 From all the facts and circumstances shown by the evidence, we find that the plaintiff sustained damages by reason of the negligent acts of defendant in the sum of $400 for which judgment will be entered in his favor.
It is so ordered.
MaddeN, Judge; Jones, Judge; Littleton, Judge; and Green, Judge, concur.
McNEIL OYSTER COMPANY (No. 43320)
In the case of the McNeil Oyster Company, plaintiff (No. 43320), the court in addition to the special findings set out first above made special findings also, as follows:
2. Plaintiff is and, during the times involved, was a corporation organized and existing under the laws of the State of Connecticut.
* * * * H=
11. After receipt of the letter of September 6, 1933, referred to in Finding No. 7, plaintiff which had oysters within the limits of the channel of the New Haven Harbor removed them. No claim is made in this suit for the destruction of any oysters within the limits of the channel.
* $ $ ‡ $
14. At the time of receipt of the letter of October 31,1933, suggesting removal of oysters within 2,000 feet of the channel, plaintiff was handicapped by lack of time, lack of capital, lack of equipment, and lack of bottoms on which to place oysters removed. Plaintiff, using the one oyster dredge boat which it owned, removed from one of its lots a portion of the oyster stock cultivated thereon. Plaintiff had reasonable opportunity and means, under all the circumstances including the obstacles with which it was confronted and the location of many of its beds near the portion of the channel originally dredged, to remove the larger part of the oyster stock, endangered by dredging operations.
sfc ❖ sfc # %
23» Prior to, during, and since 1933, plaintiff had been the operator of lots nos. 68, 96, 97, 103, and 106 in New Haven Harbor. Lots 68, 97, 103, and 106 lie partly in the channel. The east side of lot 96 is about 400 feet west of the west edge *429 of the channel. The location of these lots is shown on defendant’s Exhibit No. 3, which is made a part hereof by reference.
The acreage and value of the lots in 1933, before the dredging commenced, were as follows:
. __ . Talue Lot No. Acres per aere
68_ 6. 9 (3.5 acres lie within the channel)_$75
96_10. 4_ 50
97_20. 3 (9 acres lie within the channel)- 50
103_32 (1 acre lies within the channel)_ 50
106_23.3 (10 acres lie within the channel)_ 75
24. At the time plaintiff received the notice of October 31, 1933, referred to in Finding No. 8, it was engaged in dredging oysters, with the one oyster dredge boat it owned, from lot 103.
It continued to dredge and remove oysters from this lot until the latter part of November, when it stopped on account of cold weather. Plaintiff removed no other oysters from its lots beyond the limits of the channel at any time during the dredging operations.
25. The proof is that plaintiff sustained substantial damages by reason of the destruction of oysters on its beds, operated under perpetual franchises from the State of Connecticut, and by reason of the destruction of parts of such beds for oyster cultivation, due to the negligence of officers and agents of the United States in performing dredging work in the harbor of New Haven in 1933, 1934, and 1935.
26. The majority of plaintiff’s lots upon which oysters were destroyed were located approximately in the center of Section I, where dredging began immediately after receipt by plaintiff of the letter of October 31,1933, suggesting that oysters be removed within 2,000 feet of the channel and notifying plaintiff that a suction type of dredge would be used.
By reason of the manner in which the injury occurred and upon the evidence proffered, it is not possible to determine with exactness the quantity of oysters destroyed or the exact areas of the lots ruined for oyster cultivation. Considering all the evidence presented and taking into consideration all circumstances, the Court finds that because of defendant’s negligence plaintiff sustained damages in the amount of $5,000.
*430 The court decided that the plaintiff was entitled to recover.
Whaley, Chief Justice,
delivered the opinion of the court:
This suit was brought to the court under a Special Jurisdictional Act of January 20,1936, 49 Stat. 2209, and plaintiff is one of the claimants mentioned therein.
The legal principles have all been settled in the case of The F. Mansfield and Sons Company, No. 43317, decided this date, and this case is governed by that decision.
Most of plaintiff’s lots were situate in the lower part of the channel known as Section I. Only one of its lots was situate in Section II. Its holdings were adjacent to the channel and received the initial dredging of the channel. Plaintiff attempted to minimize its damages by removing oysters from one of its lots, but this removal was. discontinued due to cold weather.
The nature of the case makes it impossible to ascertain accurately to what extent the lots were damaged and what quantity of the oysters was destroyed but this does not prevent us from making a fair estimate of the damage sustained by plaintiff in the same manner that a jury would under similar circumstances.
From all of the facts and circumstances shown by the evidence, we find that the plaintiff sustained damages by reason of the negligent acts of defendant in the sum of $5,000 for which judgment will be entered in its favor. It is so ordered.
Madden, Judge; Jones, Judge; Littleton, Judge; and Gkeen, Judge, concur.
CHAELES K. WEDMOEE (No. 43321)
In the case of Charles K. Wedmore, plaintiff (No. 43321), the court in addition to the special findings set out first above made special findings also, as follows:
2. Plaintiff is a resident of New Haven, Connecticut, and has been engaged in oyster farming for over 50 years.
*431 11. The lot involved in this suit was not located within the limits of the channel and no claim is made by plaintiff for the destruction of any oysters within the channel limits.
*****
14. At the time of receipt of the letter of October 31,1933, suggesting removal of oysters within 2,000 feet of the channel, plaintiff was handicapped by lack of time, Jack of capital, lack of equipment, and lack of bottoms on which to place oysters removed. Plaintiff at no time during dredging operations in the channel took steps to overcome these obstacles and failed to remove any oysters whatsoever from his bed. Plaintiff had reasonable opportunity and means, under all the circumstances including the obstacles with which he was confronted, to remove a part of the oyster stock endangered by dredging operations.
‡ # * ❖ ❖
23. Prior to, during, and since 1933, plaintiff has been the operator of lot No. 92 in New Haven Harbor containing 13.3 acres. The east side of this lot lies about 400 feet west of the west edge of the channel. The location of this lot is shown on defendant’s Exhibit No. 3, made a part hereof by reference. The value of plaintiff’s lot in 1933, before the dredging began, was $50 per acre, making for the 13.3 acres a total of $665.
24. At no time during the dredging operations did plaintiff make any attempt to remove oysters endangered by the dredging in New Haven Harbor to mitigate the damages.
25. The proof is that plaintiff sustained damages by reason of the destruction of oysters on his bed, operated under perpetual franchise from the State of Connecticut, and by reason of the destruction of the bed for oyster cultivation, due to the negligence of officers and agents of the United States in performing dredging work in the harbor of New Haven, in 1933, 1934, and 1935.
26. By reason of the manner in which the injury occurred and upon the evidence proffered it is not possible to determine with exactness the quantity of oysters destroyed. Considering all the evidence presented and taking in consideration all *432 the circumstances, the Court finds that because of defendant’s negligence plaintiff sustained damages in the amount of $3,000.
The court decided that the plaintiff was entitled to recover.
Whaley, Chief Justice,
delivered the opinion of the court:
Plaintiff is one of several claimants mentioned in the Spe-1 cial Jurisdictional Act of January 20,1936,49 Stat. 2209, and claims recovery for injury to his oyster lot in New Haven Harbor, State of Connecticut, and for destruction of the seed oysters thereon.
The legal principles involved herein are the same as those in the case of The F. Mansfield and Sons Company, No. 43317, decided this date, and this case is governed by that decision.
Plaintiff’s one lot was situate within the 2,000-foot limit but had intervening between it and the channel lots operated by another oyster grower. Plaintiff made no attempt to minimize his damage.
The nature of the case makes it impossible to ascertain accurately the quantity of oysters destroyed or the extent of the injury to the lot of plaintiff but this does not prevent us from making a fair estimate of the damage sustained by plaintiff in the same manner that a jury would under similar circumstances.
From all of the facts and circumstances shown by the' evidence, we find that the plaintiff sustained damages by reason of the negligent acts of defendant in the amount of $3,000 for which sum judgment will be entered in favor of plaintiff. It is so ordered.
MaddeN, Judge; Jones, Judge; Littleton, Judge; and GReen, Judge, concur.
THOMAS OYSTER COMPANY, INCORPORATED (No. 43322)
In the case of the Thomas Oyster Company, Incorporated, plaintiff (No. 43322), the court in addition to the special findings set out first above made special findings also, as follows:
*433 2. Plaintiff is and, during the times involved, was a corporation organized and existing under the laws of the State of Connecticut.
* * * * . *
11. The lot involved in this suit was not located within the limits of the channel and no claim is made by plaintiff for the destruction of any oysters within the channel limits.
*****
14. At the time of receipt of the letter of October 31, 1933, suggesting removal of oysters within 2,000 feet of the channel, plaintiff was handicapped by lack of time, lack of capital, lack of equipment, and lack of bottoms on which to place oysters removed.
Plaintiff during the dredging operations took steps to overcome these obstacles and did remove quantities of oysters from its bed which was located adjacent to and south of Section I where the initial dredging occurred. Plaintiff did not have reasonable opportunity and means, under all the circumstances, to remove any larger portion of the oyster stock, endangered by dredging operations.
*****
23. Prior to, during, and since 1933, plaintiff has been the operator of lot 324, lying just outside the New Haven Harbor, containing 92.9 acres. The south end of the new 25-foot channel began approximately at the northwest corner of this lot, and no dredging was required within the limits of this lot. The location of this lot is shown on defendant’s Exhibit No. 3, made a part hereof by reference.
The market value of plaintiff’s lot 324, before the dredging operations began, was $75 per acre.
24. After plaintiff received the notice of September 6, 1933, referred to in Finding No. 7, one of its officers went to Providence, Rhode Island, for the purpose of inducing the engineers in charge of the work to delay commencement of the dredging, in order to give time to remove oysters from this lot. Afterwards this officer went to Greenport, Long Island, and secured a plot of oyster ground to which plaintiff intended to move some of the oysters it had on lot *434 324. About the middle of October plaintiff started with its oyster dredge boat to remove oysters from lot 324, and was working on the lot the day defendant’s seagoing hopper dredge began dredging the channel. Plaintiff’s newly acquired ground at Greenport was a 5%-hour trip each way with its boat. Four trips with oysters from lot 324 were made to Greenport. Altogether plaintiff had removed about 5,000 bushels of oysters by the middle of November 1933, when removal of oysters from this lot was discontinued because mud and silt placed in suspension in the water were settling upon the lot and plaintiff decided that, if the oysters were taken to Greenport and replanted in the condition they were, they would die.
25. Plaintiff, in the spring of 1934, began cleaning off lot 324 and continued such cleaning operations from time to time for several years thereafter, consuming altogether in such work about 90 days during each of which plaintiff used its dredge boat with a crew of four deck hands and a captain. The cost of operating plaintiff’s dredge boat was $50 a day. The additional expense for the extra work in these cleaning operations removing mud and dead oysters was $3,600.
26. The proof is that plaintiff sustained damages by reason of the destruction of oysters on his bed, operated under perpetual franchise from the state of Connecticut, due to the negligence of officers and agents of the United States in performing dredging work in the Harbor of New Haven, in 1933, 1934, and 1935.
27. Plaintiff’s lot upon which oysters were destroyed was located adjacent to the southern end of Section I, the portion of the channel initially dredged.
By reason of the manner in which the injury occurred and upon the evidence proffered, it is not possible to determine with exactness the quantity of oysters destroyed. Considering all the evidence presented and taking into consideration all circumstances, including expenditures by plaintiff in cleaning its lot of mud deposited thereon by defendant’s dredging operations, the court finds that because of defendant’s negligence plaintiff sustained damages in the amount of $14,000.
*435 The court decided that the plaintiff was entitled to recover.
Whauey, Chief Justice,
delivered the opinion of the court:
Plaintiff is one of the claimants included in the Special Jurisdictional Act of January 20, 1936, 49 Stat. 2209, for recovery of compensation for injury to its oyster beds and for the destruction of seed oysters in the harbor of New Haven in the State of Connecticut.
Plaintiff was the operator of a lot situate just south of the initial point at which the dredging commenced. Plaintiff attempted to have the dredging delayed in order to permit it to remove some of its seed oysters. Plaintiff succeeded in minimizing its damages by the removal of some of its oysters but was prevented from continuing to remove the oysters because of the amount of mud and silt placed in suspension.
This case is governed by the decision in the case of The F. Mansfield and Sons Company, No. 43317, decided this day. The facts in the instant case are only slightly different but the legal principles are the same.
The nature of the case makes it impossible to determine exactly how much mud and silt were deposited on plaintiff’s lot and the extent of the damage to the oysters but this does not prevent us from making a fair estimate of the damages sustained by plaintiff in the same manner that a jury would under similar circumstances.
From all the facts and circumstances shown by the evidence, we find that plaintiff sustained damages by reason of the negligent acts of defendant in the amount of $14,000, for which sum judgment will be entered in its favor.
It is so ordered.
MaddeN, Judge; Jones, Judge; Littleton, Judge; and Green, Judge, concur.
KRAL AND ROHR (No. 43323)
In. the case of Fred C. Krai and George A. Rohr, a Co-partnership, Trading as Krai and Rohr (No. 43323), the *436 court in addition to the special findings set out first above made also special findings, as follows:
2. Plaintiffs are residents of New Haven, Connecticut, and were partners in oyster farming from 1929 to and including the years 1933 and 1934. Prior to the forming of the partnership in 1929 each of the plaintiffs had worked on oyster farms, chiefly as deck hands, for 18 or 20 years.
* # sj« # H:
11. None of the lots involved in this suit was located within the limits of the channel and no claim is made by plaintiffs for the destruction of any oysters within the channel limits.
‡ $ H: $ ^
14. At the time of receipt of the letter of October 31,1933, suggesting removal of oysters within 2,000 feet of the channel, plaintiffs were handicapped by lack of time, lack of capital, lack of equipment and lack of bottoms on which to place oysters removed. Plaintiffs at no time during dredging operations in the channel took steps to overcome these obstacles and failed to remove any oysters whatsoever from their beds. Plaintiffs had reasonable opportunity and means, under all the circumstances including the obstacles with which they were confronted, to remove a part of the oyster stock endangered by dredging operations.
* # * * #
23. On February 4, 1929, plaintiffs leased lot 135 containing 4 acres, and on November 4,1929, they leased lot 154 containing 6 acres. Both of these lots lie in New Haven Harbor and their location is shown on defendant’s Exhibit No. 3, which is made a part hereof by reference. Each of these leases was canceled in July of 1935.
The eastern boundary of lot 154 is between 600 and 700 feet west of the west side of the channel, and the eastern boundary of lot 135 is about 1,600 feet west of the west side of the channel.
24. In the fall of 1934, the plaintiffs and one hired man dredged over these lots for three months in an effort to stir up the mud to get it to flow and to clean up the dead oysters. *437 Plaintiffs paid the hired man $3 per day and plaintiffs’ time was worth $5 per day each.
25. At no time during the dredging operations did plaintiffs make any attempt to remove all or any part of the oysters endangered by the dredging in New Haven Harbor in order to mitigate damage.
26. The proof is that plaintiffs sustained damages by reason of the destruction of oysters on their beds, leased and operated under perpetual franchises or leases from the State of Connecticut, due to the negligence of officers and agents of the United States in performing dredging work in the Harbor of New Haven, in 1933,1934, and 1935.
27. By reason of the manner in which the injury occurred and upon the evidence proferred, it is not possible to determine with exactness the quantity of oysters destroyed. Considering all the evidence presented and taking into consideration all circumstances, including expenditure by plaintiffs in attempting to clean its lot of mud deposited thereon by defendant’s dredging operations, the Court finds that because of defendant’s negligence plaintiffs sustained damages in the amount of $1,000.
The court decided that the plaintiff was entitled to recover.
Whaley, GMef Justice,
delivered the opinion of the court:
This case came to the court under the Special Jurisdictional Act of January 20, 1936, 49 Stat. 2209, and plaintiffs are included as claimants for compensation for injury to their oyster beds in the harbor of New Haven, State of Connecticut, and for the destruction of their seed oysters.
Plaintiffs were the lessees of two small lots in the harbor of New Haven, both of which lots were situate in the northern part of Section II. No attempt was made by the plaintiffs to minimize their damagej although there were no substantial dredging operations in this section until April 1934.
This case is governed by the decision in The F. Mansfield and Sons Company case No. 43317, decided this day. The facts in the two cases vary only slightly.
*438 The smaller of plaintiffs’ two lots was situate a considerable distance from the channel bed although in the harbor area.
Plaintiffs have suffered some damage from the negligence of the defendant in causing the placing of mud on their lots.
The nature of the case makes it impossible to ascertain accurately the amount of mud deposited and the quantity of oysters destroyed, but this does not prevent us from making a fair estimate of the damage sustained by plaintiffs in the same manner that a jury would under similar circumstances.
From all the facts and circumstances shown by the evidence, we find that plaintiffs sustained damage by reason of the negligent acts of defendant in the amount of $1,000, for which sum judgment will be entered in plaintiffs’ favor.
It is so ordered.
MaddeN, Judge; Jones, Judge\ Littueton, Judge; .and Geeen, Judge, concur.
CONNECTICUT OYSTEE FAEMS COMPANY, A COE-POEATION (No. 43324)
In the case of the Connecticut Oyster Farms Company, a Corporation, plaintiff (No. 43324), the court in addition to the special findings set out first above made special findings also, as follows:
2. Plaintiff is and, during the times involved, was a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Bridgeport, Connecticut.
***** Plaintiff was chiefly engaged in raising seed oysters.
* % * # *
11. The lot involved in this suit was not located within the limits of the channel and no claim is made by plaintiff for the destruction of any oysters within the channel limits.
* * * * #
14. At the time of receipt of the letter of October 31, 1933, suggesting removal of oysters within 2,000 feet of the channel, plaintiff was handicapped by lack of time, lack of capital, *439 lack of equipment, and lack of bottoms on which to place oysters removed.
Upon receipt of the letter of October 31, 1933, suggesting removal of all oysters within 2,000 feet of the charnel, plaintiff removed a part of its oyster stock located on lots other than the lot here involved. Plaintiff had reasonable opportunity and means, under all the circumstances including the obstacles with which plaintiff was confronted, to remove a part of its oyster stock on lot 134 endangered by dredging operations.
H* * ♦ ‡ *
23. Prior to, during, and since the year 1933, plaintiff has been the operator of lot 134 in New Haven Harbor. The west boundary of this lot is more than 2,000 feet and less than a half mile from the east side of the channel. The location of this lot is shown on defendant’s Exhibit No. 3, made a part hereof by reference.
24. For many years plaintiff has been engaged in oyster farming on a large scale. Since 1912 plaintiff has used the 50 acres of lot 134 which were under cultivation to produce seed oysters. Each year before the spawning season the lot was cleaned off and shells planted thereon to catch a “set.” The following spring or early summer the seed oysters were transplanted to other grounds for development.
25. When plaintiff received the notice of October 31,1933, referred to in Finding No. 8, which suggested that steps be taken to remove oysters within 2,000 feet, or one-half mile, of the channel, it operated two other lots in New Haven Harbor on which seed oysters were raised. These lots were about the same distance from the channel as lot 134 and were more valuable than lot 134. Plaintiff decided to first remove, and did so remove, oysters from the other two lots.
At no time thereafter during the dredging operations did plaintiff make any attempt to remove all or any oysters on lot 134 endangered by the dredging in New Haven Harbor to mitigate the damages.
26. In the spring of 1936 plaintiff dredged and agitated the bottom of lot 134, partially for the purpose of preparing the bottom for the regular planting of shells and partially for the purpose of removing silt deposited thereon by de *440 fendant’s dredging operations. Plaintiff worked with, three oyster dredge boats, each manned with a captain and four workmen, for a period of two weeks at a cost of $50 a day. Not more than one-third of the cost of this operation was attributable to the cleaning of mud deposited by defendant’s dredging operations.
After removal by plaintiff of mud and silt, as described above, lot 134 was suitable for oyster cultivation.
27. The proof is that plaintiff sustained damages by reason of the destruction of oysters on its bed, operated under perpetual franchise from the State of Connecticut, due to the negligence of officers and agents of the. United States in performing dredging work in the Harbor of New Haven, in 1983,1934, and 1935.
28. By reason of the manner in which the injury occurred and upon the evidence proffered, it is not possible to determine with exactness the quantity of oysters destroyed on lot 134.
Considering all the circumstances, including expenditure by plaintiff in cleaning its lot of mud deposited thereon by defendant’s dredging operations, the Court finds that because of defendant’s negligence plaintiff sustained damages in the amount of $1,200.
The court decided that the plaintiff was entitled to recover.
Whaley, Chief Justice,
delivered the opinion of the court:
This case came to the court under a Special Jurisdictional Act, January 20,1936, 49 Stat. 2209. Plaintiff was included as one of the claimants for compensation for injury to its oyster bed and destruction of its seed oysters.
Plaintiff was the operator of a large lot in the first section situate in New Haven Harbor in the State of Connecticut.
The legal principles enunciated in The F. Mansfield and Sons Company case, No. 43317, decided this day, are those governing this case. The facts in this case are slightly different in that this lot was situated a considerable distance from the channel and outside of the 2,000-foot area and only a part of the lot was cultivated. The larger part of plaintiff’s holding was not affected by the dredging.
*441 Tbe nature of the case makes it impossible to ascertain accurately the quantity of oysters destroyed or the extent of the injury to the lot of plaintiff but this does not prevent us from making a fair estimate of the damage sustained by plaintiff in the same manner that a jury would under similar circumstances.
From all the facts and circumstances shown by the evidence, we find that the plaintiff sustained damages by reason of the negligent acts of defendant in the amount of $1,200 for which sum judgment will be entered in its favor. It is so ordered.
MaddeN, Judge; JoNEs, Judge; LittletoN, Judge; and GeeeN, Judge, concur.