Littleton, Judge,
delivered the opinion of the court:
This is a suit involving a claim for. damages to certain oyster beds leased and planted by plaintiff’s intestate, Harry W. Sharpley, caused by sewage emanating from the Naval Auxiliary Air Station at Chincoteague, Virginia, and the flow of such, sewage over and across the oyster, grounds.
*649 Jurisdiction was conferred upon this court to hear, determine, and render judgment upon the plaintiff’s claim by an Act of Congress approved April 22,1949, Private Law 37, 81st Cong., 1st Sess., 63 Stat. 1089. The Act is as follows:
To confer jurisdiction upon the Court of Claims to hear, determine, and render judgment upon a certain claim of Harry W. Sharpley, his heirs, administrators, or assigns, against the United States.
Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That jurisdiction is hereby conferred upon the Court of Claims to hear, determine, and render judgment upon the claim of Harry W. Sharpley, of Greenbackville, Virginia, his heirs, administrators, or assigns, against the United States for alleged damages caused by the sewage emanating from the Naval Auxiliary Air Station, at Chincoteague, Virginia, and the flow of such sewage over and across certain oyster grounds located in Mosquito Creek, Virginia, which grounds had been leased by the said Harry W. Sharpley.
Seo. 2. Proceedings for the determination of said claim shall be had in the same manner as in cases of which said court has jurisdiction under the provisions of section 145 of the Judicial Code, as amended: Provided, That suit hereunder shall be instituted within four months after the enactment of this Act: And provided further, That this Act shall be construed only to waive the immunity from suit of the Government of the United States with respect to the claim óf said Harry W. Sharpley, his heirs, administrators, or assigns, and not otherwise to affect any substantive rights of the parties: And provided further, That nothing in this Act shall be construed as an inference of liability on the part of the United States.
The defendant contends that plaintiff is not entitled to recover because (1) plaintiff does not come within the terms of the Act, (2) any damage caused to the oyster beds is due to the acts of the State of Virginia in restricting the oyster beds, and not due to any acts of defendant, and (3) that plaintiff’s injury results from plaintiff’s own neglect in failing to remove its oysters to other grounds after restriction of the area.
Harry W. Sharpley, on March 1, 1937, leased from Margaret Somers and others, for a term of five years, oyster *650 grounds in Little Mosquito Creek, in the State of Virginia, containing 16.06 acres known as the “W. H. Hickman and Meelheim Oyster Grounds * * * together with the right to use all of the grounds in Little Mosquito Creek running from shore to shore * * The rental was $116.06 per year, for both the 16.06 acres and the rest of the oyster grounds running from each shore to low-water mark. The lease was renewed January 1, 1942, for a second period of five years, upon identical terms.
Sharpley planted'something over 5,000 bushels of oysters on the leased grounds in Little Mosquito Creek in 1941 and early 1942. The oysters were planted above low-water mark. He planned to market these oysters beginning in the fall of 1942, and on October 30, 1942, had actually begun marketing them. At that time, the reasonable value of the oysters in their location in the beds was $1.00 per bushel.
Meanwhile, early in 1942, the defendant began construction of the Naval Auxiliary Air Station at Chincoteague, Virginia. This Air Station abuts on Little Mosquito Creek, and adjoins the oyster grounds leased by Sharpley.
On September 24 and October 6,1942, Herman W. Snidow, assistant engineer with the Bureau of Sanitary Engineering for the State of Virginia, made inspections of the ground of the Air Station, during which he observed human fecal deposits in a ravine or gorge, the natural surface drainage from which, went immediately into Little Mosquito Creek. Mr. Snidow was advised that there were approximately 250 men working in the immediate area, and that a number of pit latrines located near the central portion of the area had been provided for the use of these men. Mr. Snidow made a report to his superior embodying the results of his inspections, and recommended the restriction of the oyster grounds leased by Sharpley.
On October 30,1942, “because of the possibility of pollution originating from a nearby development during its construction and proposed discharge of sewage effluent into Mosquito Creek,” Sharpley was served with a notice of restriction or condemnation of his oyster grounds by W. D. Steelman, an oyster inspector for the State of Virginia. This notice was to be effective November 2, 1942, and declared the shellfish *651 areas in Mosquito Creek leased by Sharpley restricted. It further provided that oysters within the area should not be removed for any purpose except as specified in Sections 3257 and 3258 of the Code of Virginia (1942 Ed.)
Sharpley orally sought permission from the oyster inspector to remove his oysters to other grounds, and he was advised that removal would not be permitted until the following year. In view of this decision and in reliance thereon Sharpley left the oysters in the condemned area, and by the following year found that the oysters had died, and were a total loss.
Plaintiff contends that an injury has been suffered as a result of pollution of the oyster grounds by defendant, for which plaintiff is entitled to recover under the Special Act. Defendant contends that plaintiff may hot recover under that Act because the damage to plaintiff,- if any, was not caused by sewage emanating from the Air Station and the flow of such sewage over and across plaintiff’s oyster grounds. In our opinion plaintiff has proved damages within the meaning of the Act. The special jurisdictional act-negatives any inference of liability, and simply confers upon plaintiff the right to litigate a claim in this court and recover compensation if entitled to it under law without bar by lapse-of time or by the immunity which the Government enjoys unless waived. The liability to which the Government is to be held under the Act is that of a private person or corporation under like circumstances. The Oyster Cases, 94 C. Cls. 397.
The facts in this case show the conditions existing on the Air Station at the time of the inspections which led to the restriction -of the area. The natural surface drainage from the-entire grounds of the Air Station went immediately into Little Mosquito Creek, where plaintiff’s oyster grounds and beds were located. These facts-compel the inference that plaintiff’s oyster grounds were in fact polluted by sewage emanating from the Air Station and the flow of such sewage over and across the oyster grounds, and accordingly we hold that plaintiff has stated a cause of action within the meaning of the Special Act.
Defendant next contends that, in any event, the cause of plaintiff’s loss was the act of the State of Virginia in restrict *652 ing plaintiff’s oyster grounds, and defendant is therefore relieved of any liability. We think this contention is without merit. The restriction of the oyster grounds was primarily due to conditions then existing on the Air Station. The cause of plaintiff’s loss was not the restriction of the oyster grounds by the State of Virginia, but the acts of defendant in making that restriction necessary. Wright v. United States, 118 C. Cls. 576; Cf. Cotton Land Company v. United States, 109 C. Cls. 816, 829. Although the pollution resulted from natural surface drainage, but for the acts of defendant in permitting the conditions existing in the area, the natural surface drainage would not have been of such character that a restriction of the oyster grounds was necessary.
Defendant finally contends that plaintiff’s loss was caused by plaintiff’s own neglect in failing to remove the oysters to other grounds. It is true that plaintiff owed to defendant the duty to take reasonable steps to avoid or mitigate his loss and, after notice, not' to aggravate the damage by failure to take affirmative steps to protect its property. The Oyster Oases, sv/pra. The evidence shows, however, that Sharpley sought permission from the oyster inspector who served him with the notice of restriction to remove his oysters to other grounds. Sharpley was told that removal of his oysters would not be permitted until the following, year. The law of Virginia in effect at this time allowed such removal only after first securing permission from the Commissipner of Fisheries in writing. Sharpley, relying on the advice of the oyster inspector, did not seek permission from the Commissioner of Fisheries, and allowed his oysters to remain in the condemned area until the following year, when he found that they had all died, and were a total loss. Under the circumstances, Sharpley acted as a reasonable man, and in so doing discharged his duty that he owed to defendant in this regard.
The oysters involved in this suit were planted by Sharpley on private pi’operty, between shore and low-water mark. As a result of the pollution of the waters by defendant where the oysters were located, the oysters died, and were a total loss. The injury in this case amounts to a direct invasion of *653 private rights for which the plaintiff is entitled to recover. G. L. Webster Company v. Steelman, 1 S. E. 2d 305.
Had the oysters been planted on grounds leased from the State, i. e., below low-water mark, the Virginia rule seems to be that there is no liability for damage to oysters caused by pollution of tidal waters, in the absence of negligence. In the Steelman case, supra, the action was brought against a company for the recovery of damages to sea food, both above and below low-water mark in tidal waters, by reason of pollution of the waters by the company and for other relief. The defendant filed a demurrer to plaintiff’s notice of motion. The trial court sustained the demurrer as to damages for the pollution of oysters and oyster beds below low-water mark, and overruled it as to damages for the pollution of oysters and oyster beds above low-water mark. On appeal, on other issues involved in the case, the court in the absence of assignments of error by the plaintiff, did not consider the question. It is, of course, well settled that discharge of sewage into tidal waters by municipalities under legislative sanction, resulting in injuries to oyster beds, is damnum absque injuria, so long as the owners of the land between low-water and high-water mark are not injured. Hampton v. Watson, 89 S. E. 81, Darling v. City of Newport News, 96 S. E. 307, aff’d 249 U. S. 540.
The evidence in this case establishes that plaintiff lost approximately 5,000 bushels of oysters at a reasonable value of $1.00 per bushel. Plaintiff contends that interest at the rate of four percent per annum from November 2,1942, should be allowed. This case is one sounding in tort, and interest is, therefore, not allowable.
Defendant makes much of the fact that subsequent to the restriction of plaintiff’s oyster grounds, two sewage treatment and disposal plants have been installed on the Air Station. Also, defendant contends that at some time prior to the completion of the sewage plants, a 15,000 gallon steel septic tank was installed for use on the Station. The evidence shows that defendant’s contentions are correct. There is, however, no evidence that either the septic tank or the sewage treatment and disposal plants were in existence at the time of *654 the injury here complained of, and they consequently have no bearing on the disposition of the case.
Plaintiff has suffered damages within the meaning of the Special Act, and under that Act is entitled to be compensated therefor. Damages were sustained in the amount of $5,000; interest is not allowable. Accordingly, upon the findings herein, judgment will be entered in favor of plaintiff for $5,000.
It is so ordered.
Howell, Judge; MaddeN, Judge; Whitaker, Judge; and Jones, C'hief Judge, concur.
FINDINGS OF FACT
The court makes findings of. fact, based upon the evidence, the report of Commissioner Currell Yance, and the briefs and argument of counsel, as follows:
. .1. By an Act of Congress approved April 22,1949, Private Law-No. 37, 81st Congress, ■ jurisdiction was conferred on the Court of Claims- to hear, determine, and render judgment upon the claim of plaintiff’s intestate herein.
2.. Plaintiff’s intestate, Harry W. Sharpley, prior to his decease on June 10, 1950, was a citizen of the United States and a resident of Greenbackville, Accomac County, in the State of Virginia. He was -engaged, in the packing and marketing of oysters, and at all times relevant to the suit in .question his place of business was in Franklin City, Virginia. The administratrix of his estate, Iíuth E. Mason, has been substituted as plaintiff in his stead in this case.
3. On March 1,1937, Harry W. Sharpley leased for a term of five years from Margaret M. Somers and others, oyster grounds in Little Mosquito Creek, in the State of Virginia, containing 16.06 acres known as the “W. H. Hickman and Meelheim. Oyster Grounds, * * * together with the right to use all of the grounds in Little Mosquito. Creek running- from Shore to Shore and from the mouth of Little Mosquito Creek to a point opposite the Old Private Wharf lying just north, of the William .H. Hickman Homestead.” The rental was $116.06 per year. The lease was renewed *655 January 1, 1942, for a second period of five years upon identical terms. - -
Sliarpley’s oyster grounds consisted of 16.06 acres of public ground rented by Sliarpley’s lessors from the State óf Virginia, and private grounds running from each shore to low-water mark. The oysters in question were planted on the private grounds, between the shore and low-water mark.
Little Mosquito Creek, where these oyster grounds áre located, is a long, narrow stream, about 50 feet wide at its mouth, and more than 100 feet wide further up the creek.
4. Sharpley planted something over 5,000 bushels óf oysters in Little Mosquito Creek on the leased ground in 1941 and early 1942. He planned to market these oysters, beginning in the fall of 1942, and had actually begun this operation at the time of the restriction of said oyster grounds, as hereinafter related. At the time of this restriction, the oysters were worth, in their location in the bed, at least $1.00 per bushel.
5. The defendant commenced construction of the Naval Auxiliary Air Station at Chincoteague, Virginia, early in 1942. The Air Station abuts on Little Mosquito Creek and adjoins the oyster grounds leased by Sharpley.
6. Effective November 2, 1942, the State Health Commissioner of the State of Virginia,
because of the possibility of pollution originating, from a nearby development during its construction and proposed discharge of sewage effluent into Mosquito Creek,
declared the
shellfish areas in Mosquito Creek within these boundaries hereinafter described are hereby restricted and oysters or clams within these boundaries shall not be removed for any purpose from the area described except as specified in Sections 3257 and 3258 of the laws providing for the removal of shellfish from the condemned area.
7. Section 3257 of the Code of Virginia (1942 Ed.) forbids the removal of shellfish condemned upon any private ground under lease or deed without authority from the Commissioner of Fisheries in writing, and further forbids the marketing of such shellfish which have been removed until the Health *656 Commissioner has declared them to have passed satisfactory tests.
Section 3258 of the Code of Virginia (1942 Ed.) forbids the removal of shellfish from condemned public grounds except through the period from May 1 to August 1.
8. The notice of the restriction or condemnation of the oyster grounds in question was served upon Sharpley by W. D. Steelman, oyster inspector for the State of Virginia. Such notice was served October 30,1942, effective November 2, 1942. As stated in finding 7, the laws of the State of Virginia in effect at this time forbade the removal of shellfish condemned upon any private grounds under lease or deed without authority from the Commissioner of Fisheries in writing. Sharpley orally sought permission to move his oysters from the condemned area from the oyster inspector who served him with notice of the restriction or condemnation. The oyster inspector advised Sharpley that removal of his oysters would not be permitted until the following year. In reliance on this advice Sharpley did not attempt to secure permission from the Commissioner of Fishei’ies, and allowed his oysters to remain in the condemned area. In so doing, and under the circumstances, Sharpley acted as a reasonable man in reliance on the advice of the oyster inspector.
9. By the following year Sharpley found that the oysters in Little Mosquito Creek had died and were a total loss.
10. The condemnation of the Mosquito oyster grounds of Sharpley resulted from reports of Herman W. Snidow, assistant engineer with the Bureau of Sanitary Engineering, State of Virginia, made to his superior, embodying the results of inspections made by him on September 24 and October 2, 1942. Mr. Snidow recommended the restriction of the oyster grounds for the following reasons:
(a) While not fully surveyed, it is likely that Little Mosquito Creek may be receiving some pollution from the watershed through which the tributaries extend inland.
(5) Additional pollution has undoubtedly been contributed due to the average of 250 men working on the immediate watershed.
*657 (o) The creek will soon receive the partially treated sewage effluent from an additional 250 men. That is based on the advice given.
(d) At some time not far in the future it is contemplated that the creek will receive the treated sewage effluent from the entire population of the air field area, whatever this may be.
(e) Comparatively little replacement in upper portion of stream with new water during tidal actions, therefore pollution would have a tendency to accumulate, or build up, in the upper portion and doubtless would not be reduced to an allowable limitation by dilution short of the point where the Little Creek joins the main line.
11. Mr. Snidow had observed in his inspections surface deposits of human fecal matter in a ravine or gorge on the ground in the Air Station, the natural surface drainage from which went immediately into Little Mosquito Creek.
12. At the time of condemnation of the Little Mosquito oyster grounds, pit latrines located near the central portion of the area had been provided for the use of the 250 men then in the area.
13. The waters of Little Mosquito Creek were polluted by sewage emanating from the Air Station, as a result of natural surface drainage from the area entering Little Mosquito Creek. Prior to the beginning of construction of the Air Station, natural surface drainage from the area had not polluted the waters of the Creek.
The restriction of the area effective November 2,1942, was primarily due to the conditions then existing on the Air Station.
14. Since the events related above there have been put in operation at the Naval Auxiliary Air Station at Chinco-teague, Virginia, two sewage treatment and disposal plants to handle all the sewage at the base. Such plants have been subject to constant inspection, and have accomplished the treatment of sewage so that the effluent therefrom has always been found free from coliform bacteria. The Little Mosquito Creek oyster bed has nevertheless remained restricted until this time, as it is the general practice to restrict oyster grounds into which the effluent from such plants is directly discharged.
*658 . Up.on the foregoing findings of fact, which, are made a part of the judgment herein, the court concludes that, as a matter of law, the plaintiff is entitled to recover, and it is adjudged and ordered'that plaintiff recover of and from the United States five thousand dollars ($5,0.00.00).