Nede Zibilich **PETROVICH**, Anthony Vlaho Petrovich, Luke Vlaho Petrovich and Anne Mary Petrovich, Plaintiffs

v.

The **UNITED STATES**, Defendant,

**JEFFERSON PARISH COUNCIL**, Third-Party Defendant,

State of Louisiana, Third-Party Defendant.

No. 148–65.

United States Court of Claims.

Feb. 20, 1970.

Robert J. Zibilich, New Orleans, La., atty. of record, for plaintiffs.

Herbert Pittle, Washington D. C., with whom was Asst. Atty. Gen. Shiro Kashiwa, for defendant.

John D. Lane, Washington, D. C., atty. of record, for third party defendant Jefferson Parish Council. John W. Lyon, Washington, D. C., and Robert I. Broussard, Gretna, La., of counsel.

John M. Currier, Asst. Atty. Gen., atty. of record for third party defendant State of Louisiana. Jack P. F. Gremillion, Atty. Gen., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

COWEN, Chief Judge.[*]

This is a case filed pursuant to 28 U.S.C. § 1497 (1964) wherein an oyster grower asserts a claim for damages allegedly arising from dredging operations of defendant United States in making river and harbor improvements authorized by act of Congress. The facts are detailed in the findings and only those necessary to put the case in posture for decision will be related here. For reasons which hereinafter appear, it is concluded that defendant United States is liable to plaintiffs[1] in the sum of $10,000. The award is of necessity derived in the nature of a jury verdict and is far less than the $450,000 claimed in the petition, which latter sum is speculative and unsupported by the evidence. The defendant's contingent claim against Jefferson Parish Council, which was summoned as a third party defendant, is dismissed.

Jefferson Parish Council filed an answer, alleging that this court has no jurisdiction over it as a third party defendant. Without waiving its jurisdictional defense, the Council answered the defendant's contingent claim.

The facts show that on March 11, 1960, the State of Louisiana executed a written document in which it assured Jefferson Parish Council that the State would hold the Council harmless on account of any liability or claim for damages incurred by the Council as a result of the assurances given to the United States by the Council (finding 5). In view of that agreement, the Jefferson Parish Council had a notice served on the State of Louisiana, pursuant to our Rule 41, to appear and assert its interest in the case. In response to the notice, the State of Louisiana appeared and filed an answer both to plaintiffs' petition and to defendant's contingent claim against Jefferson Parish Council.

## I

The Barataria Bay Waterway project was authorized by Act of July 3, 1958, 72 Stat. 297, 298. Before the defendant United States would proceed with construction it required that local authorities give an act of assurance to "[h]old and save the United States free from damages resulting from construction and maintenance of the project." The Jefferson Parish Council, in writing, extended such assurance. The State of Louisiana, in turn, extended a similar assurance to the Parish. Work commenced on August 8, 1962, and was finished on November 9, 1963.

The project involved enlargement by dredging of a channel in the inland waterway system, which channel crossed a corner of a 190-acre lease Petrovich had obtained from the State of Louisiana for the growing of oysters in Bayou Colas, Jefferson Parish. The 6.4 acres directly necessary for the project right-of-way were judicially acquired by the State of Louisiana at a valuation of $800 per acre with an additional allowance for oysters destroyed.

The Government plan for construction involved use of a bucket dredge which would deposit excavated material (spoil) along both sides of the waterway, with 200-foot openings to be left between every 800 feet of spoil bank. The spoil was to be placed in open water.

State and parish officials were consulted about the construction plans and were aware of the kind of equipment to be used in the Bayou Colas area. They did not protest but rather extended full cooperation. The openings in the spoil banks were designed at the suggestion of the State of Louisiana to maintain

---

[*] The court acknowledges the assistance it has received from the report of Chief Commissioner Marion T. Bennett. We have adopted Parts 1, 2, and 3, of his opinion and have relied heavily on Part 4 of his opinion.

1. Plaintiff Vlaho Petrovich died May 28, 1966, and his heirs Nede Zibilich Petrovich, Anthony Vlaho Petrovich, Luke Vlaho Petrovich and Anne Mary Petrovich have been substituted as plaintiffs with shares as set forth in finding 10.

currents and allow lateral passage of small vessels.

Plaintiffs now complain that the spoil banks did impede the currents, causing silt previously in suspension to be deposited on oyster beds of the lease. It is also alleged that silt was deposited on the oyster beds by erosion of the spoil banks and by dredging with the bucket dredge instead of a hydraulic dredge which could have placed the spoil elsewhere than in open water. For whatever reason, the evidence does establish, and the principal expert witness for defendant United States admitted in his testimony at the trial, that plaintiffs suffered damage to their lease, causing a reduction in oyster production by siltation, and that this can best be attributed to the project. Plaintiffs have not alleged a taking.

Numerous witnesses, including experts, were called by the parties; their estimates of damage varied considerably, yet all but one concluded that the project had caused damage to all or part of the remaining 183.6 acres of plaintiffs' lease.

The evidence is conflicting as to permanence of the damage incurred; the weight of the crdible evidence is that it is temporary in nature. The silt has largely cleared from the lease by the natural settling of the spoil banks and reactivation of currents. At most, the damage affected 51 acres of the lease. The weight of the evidence suggests that about 31 acres near the waterway suffered serious damage to oyster production which can reasonably be attributed to the project. A hurricane apparently contributed to some siltation of oyster beds, and the evidence shows that siltation in Bayou Colas is also caused by other factors, such as drainage of rainfall, erosion of marshes, disturbance of water levels by winds and tides, and the backsweep of waters from the Mississippi River. Future maintenance of the channel is to be by hydraulic dredge with which new spoil will be placed on land, so that reoccurrence of any deleterious effects of bucket dredging is unlikely.

II

The jurisdictional basis for this action, 28 U.S.C. § 1497 (1964), originated as a Senate amendment to the Rivers and Harbors Act of August 30, 1935, ch. 831, 49 Stat. 1028, 1049.[2] In Schroeder Besse Oyster Co. v. United States, 95 Ct. Cl. 729 (1942), the Court of Claims decided that a showing of factual causation by plaintiff oyster grower would be sufficient to establish liability of the Government:

> Under the terms of this act the Government has not only given plaintiff the right to sue for damages but it admits its liability for all damages resulting to oyster growers from "dredging operations and use of other machinery and equipment" for making such improvements.
>
> It is not necessary under the terms of this act to prove negligence in the operation of any instrumentality of the Government but simply to show by the preponderance of the evidence that the plaintiff was an oyster grower who was damaged as a result of dredging operations and the use of machinery and equipment in making the improvements. [95 Ct.Cl. at 738] [3]

Two subsequent cases have affirmed the holding of *Schroeder Besse* by

---

2. 79 Cong.Rec. 9414 (1935), S.Rep.No. 893, 74th Cong., 1st Sess. (1935). The legislative history of this aspect of the Act is so scant as to be without interpretative value. S.Rep.No.893, *supra* at 83; H.R.Rep.No.1816, 74th Cong., 1st Sess. 25 (1935); 79 Cong.Rec. 3682ff. (1935).

3. The court arrived at such conclusion notwithstanding earlier dictum to the contrary. F. Mansfield & Sons v. United States and seven other cases [The Oyster Cases], 94 Ct.Cl. 397, 413–414 (1941).

implication,[4] while a third has done so expressly.[5] Indeed, the Government here concedes that no proof of its negligence is required by plaintiffs.[6]

### III

▮ This court has enunciated its acceptance of the "settled principle that where the fact of damage has been established, absolute certainty or precise mathematical accuracy as to the amount of damages is not necessary."[7] This view is in consonance with the following explanation by the Supreme Court in Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 562–563, 51 S.Ct. 248, 75 L.Ed. 544 (1931):

* * * there is a clear distinction between the measure of proof necessary to establish the fact that petitioner had sustained some damage, and the measure of proof necessary to enable the jury to fix the amount. The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount. * * *

Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence shows the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise.

The Court of Claims has had occasion to consider damage claims by oyster growers in at least three contexts: fifth amendment taking cases,[8] suits under special jurisdictional acts,[9] and suits under predecessors of 28 U.S.C. § 1497 (1964).[10] Most frequently at issue as

---

4. H. J. Lewis Oyster Co. v. United States, 123 Ct.Cl. 358, 107 F.Supp. 570 (1952), cert. denied, 345 U.S. 939, 73 S.Ct. 830, 97 L.Ed. 1366 (1953); Seipp v. United States, 107 Ct.Cl. 210, 68 F.Supp. 205 (1946).

5. Dixon v. United States, 103 Ct.Cl. 160, 165 (1945).

6. Brief of Defendant United States at 1–2. The third parties contend. as one basis for avoiding contingent liability, that the Corps of Engineers was negligent in not using a hydraulic dredge instead of a bucket dredge. Plaintiffs say this in hopes of strengthening their claim. Negligence has not been proven and it is not shown that any of the parties complained about defendant's proposed machinery for dredging before work began in Bayou Colas. It was held in certain circumstances that use of the hydraulic dredge may be negligence. Cf. The Oyster Cases, 94 Ct.Cl. 397 (1941); Beacon Oyster Co. v. United States, 105 Ct.Cl. 227, 63 F.Supp. 761 (1946).

7. Dale Constr. Co. v. United States, 168 Ct.Cl. 692, 729 (1964), and cases cited

therein; accord, Luria Bros. & Co. v. United States, 177 Ct.Cl. 676, 695–696, 369 F.2d 701, 712–713 (1966); Adams v. United States, 175 Ct.Cl. 288, 299, 358 F.2d 986, 993 (1966); Specialty Assembling & Packing Co. v. United States, 174 Ct.Cl. 153, 184, 355 F.2d 554, 572–573 (1966), and cases cited therein.

8. Tignor v. United States, 65 Ct.Cl. 321 (1928); Bailey v. United States, 62 Ct.Cl. 77 (1926), cert. denied, 273 U.S. 751, 47 S.Ct. 455, 71 L.Ed. 873 (1927).

9. Mason v. United States, 123 Ct.Cl. 647 (1952); Beacon Oyster Co. v. United States, 105 Ct.Cl. 227, 63 F.Supp. 761 (1946); The Oyster Cases, 94 Ct.Cl. 397 (1941); Andrew Radel Oyster Co. v. United States, 78 Ct.Cl. 816 (1934).

10. H. J. Lewis Oyster Co. v. United States, 123 Ct.Cl. 358, 107 F.Supp. 570 (1952), cert. denied, 345 U.S. 939, 73 S.Ct. 830, 97 L.Ed. 1366 (1953); Seipp v. United States, 107 Ct.Cl. 210, 68 F.Supp. 205 (1946); Dixon v. United States, 103 Ct.Cl. 160 (1945); Schroeder Besse Oyster Co. v. United States, 95 Ct.Cl. 729 (1942).

items of alleged damage are loss of value of oyster bed leases and destruction of oysters on leases due to the Government action sued upon.

That normal difficulties in proof of damages are compounded by the very nature of a claim for destruction of oysters or loss of value of a submerged lease was recognized in F. Mansfield & Sons v. United States and seven other cases [The Oyster Cases], 94 Ct.Cl. 397 (1941). The state of the evidence there was described as follows:

It is impossible to satisfactorily calculate with any definite exactitude the amount of mud deposited on the lots, the number of lots actually affected in whole or in part, the number of oysters destroyed, and the number which could have been removed in mitigation of damages. * * * It is impossible to fix with any accuracy how far from the channel, where operations were being conducted, that the silt and mud extended. * * *

The amount of damage cannot be determined with any degree of accuracy and finality. Even the values vary. * * * [94 Ct.Cl. at 420.]

The court went on to explain, however, that—

* * * neither the fact that damages are difficult to ascertain nor that they cannot be calculated with mathematical accuracy constitutes a bar to recovery. [Citations omitted.]

All that is required is the allowance of such damage as, in the judgment of fair men, directly and naturally resulted from the injury sustained. There is no question that the plaintiff has suffered a loss through the negligent act of the Government * * *. [94 Ct.Cl. at 421.]

Accordingly, "acting as intelligent and fair-minded men composing a jury," it awarded plaintiff a verdict of $45,000.

A similar procedure was followed in Beacon Oyster Co. v. United States, 105 Ct.Cl. 227, 241, 247, 63 F.Supp. 761, 765 (1946).

Even in the absence of "any regular system of records or bookkeeping by the plaintiff" as to the "cause and amount" of damage, plaintiff received a jury verdict judgment in Seipp v. United States, 107 Ct.Cl. 210, 218–219, 68 F.Supp. 205, 206 (1946). Although plaintiff's claim was denied in part, the test for measure of damages promulgated in *The Oyster Cases* has been reiterated and applied by the Court of Claims.[11]

■ As is so often true with oyster claims before the court, the evidence falls far short of being very satisfactory as to the amount of damages suffered. This fact is illustrated in detail by the findings. The petition claims $450,000 for loss of 150,000 sacks of oysters at $3 per sack. Plaintiffs' proof and requested findings go in another direction, claiming $77,992.50 for destruction for oyster production of 75.4 acres ($1,034.-37 per acre) and a like amount for "possibility of further damages." The evidence supports none of these figures. Helpful documentary evidence on damages is here largely nonexistent and, as usual, the experts are pretty far apart as to the extent of damages and reasonable compensation therefor. It is very clear, however, that due to no fault of his own, Petrovich suffered damage, temporary in nature, by Government construction of the Barataria Bay Waterway project. Although there are deficiencies in the quality of the proof, perhaps made inevitable by the nature of a claim for a crop to be harvested from beneath the waters, there is sufficient evidence in the record so that, considering the relative qualifications of the experts, the testimony of the many other witnesses and the exhibits received into evidence at the trial, it is reason-

11. H. J. Lewis Oyster Co. v. United States, 123 Ct.Cl. 358, 371–372, 107 F. Supp. 570, 577 (1952), cert. denied, 345 U.S. 939, 73 S.Ct. 830, 97 L.Ed. 1366 (1953); cf. Andrew Radel Oyster Co. v. United States, 78 Ct.Cl. 816, 823, 827, 828, 829 (1934); Bailey v. United States, 62 Ct.Cl. 77, 92 (1926), cert. denied, 273 U.S. 751, 47 S.Ct. 455, 71 L.Ed. 873 (1927).

able to conclude as a jury would, and from the record as a whole, that the sum of $10,000 would represent fair and reasonable compensation to plaintiffs. Nothing is allowed for plaintiffs' claim for "the possibility of further damages" since this is too speculative for consideration and measurement by any test.

## IV

On motion of defendant United States, the Jefferson Parish Council, Gretna, Louisiana, was summoned and has appeared as a third party defendant. The factual basis of the Government's motion for issuance of summons to the council was the resolution of that body heretofore referred to, which included an obligation to "[h]old and save the United States free from damages due to construction and maintenance of the [Barataria Bay Waterway] project." The United States contends that this court has jurisdiction to enter judgment over against Jefferson Parish Council for any recovery had by plaintiffs against the Government herein.

Jurisdiction over third parties in the Court of Claims stems from Section 14(b) of the Contract Settlement Act of 1944, 41 U.S.C. § 114(b) (1964), which reads in pertinent part as follows:

The Court of Claims, on motion of either of the parties, or on its own motion, may summon any and all persons with legal capacity to be sued to appear as a party or parties in any suit or proceeding of any nature whatsoever pending in said court to assert and defend their interests, if any, in such suits or proceedings, * * *. The Court of Claims may, upon motion of the Attorney General, in any suit or proceeding where there may be any number of persons having possible interests therein, notify such persons to appear to assert and defend

such interests. * * * [E]xcept that the United States shall not be heard upon any counterclaims, claims for damages or other demands whatsoever against such person, other than claims and contingent claims for the recovery of money hereafter paid by the United States in respect of the transaction or matter which constitutes the subject matter of such case, unless and until such person shall assert therein a claim, or an interest in a claim, against the United States, * * *.

This statutory provision originated as a House amendment to the Contract Settlement Act.[12]

The statute does not empower this court to render judgment on the Government's contingent claim against Jefferson Parish Council unless (1) the Government's claim is for the recovery of money which it has already paid out to the third party in respect of the transaction or matter which constitutes the subject matter of the suit, or (2) Jefferson Parish Council has asserted a claim, or an interest in a claim against the United States, Bowser, Inc. v. United States, 420 F.2d 1057 (Jan. 23, 1970). We reiterate our holding in that case that Section 14(b) of the Contract Settlement Act does not vest us with jurisdiction to render judgment on a contingent claim by the Government against a third party solely on the basis of that party's obligation to "save harmless" the United States from the damages recovered in the principal action. Since the Government here does not seek to recover from Jefferson Parish Council money which it once had but has paid out to the Council in respect to the subject matter of the suit, the Government's contingent claim against the Council must be dismissed.[13] Concededly, the

---

12. 90 Cong.Rec. 5190 (1944), H.R.Rep. No.1590, 78th Cong., 2d Sess. 33 (1944).

13. Although Jefferson Parish Council notified the State of Louisiana to appear herein, the Council is not seeking any recovery over against the State in this

action. Both the Council and the Government acknowledge that we do not have jurisdiction to render judgment on any claim of the Council against the State. See Rolls Royce, Ltd., Derby, England v. United States, 176 Ct.Cl. 694, 364 F.2d 415 (1966).

Jefferson Parish Council has not asserted a claim, or an interest in a claim, against the United States in this action.

Jefferson Parish Council has admitted in its answer that it executed the "save harmless" agreement in behalf of the United States, but it has not in any way admitted its liability to the Government for the amount of plaintiffs' recovery in this case. To the contrary the Council has asserted (1) that the assurances it executed do not apply to the 190 acres which were the subject of plaintiffs' claim, and (2) that the assurances do not apply in the case of damages caused by negligence of the United States or its employees. Since we are not authorized to hear and determine the merits of these defenses against the Government's contingent claim, these issues must be resolved in an appropriate forum in the event the Government desires to take action against the Council.

## V

■ Although we have no jurisdiction over the Government's contingent claim against Jefferson Parish Council, we hold here as we did in Bowser, Inc. v. United States, *supra,* that the decision and judgment on plaintiffs' claim against the Government binds Jefferson Parish Council and the State of Louisiana as fully as it does the United States. As we have previously stated, both the Council and the State of Louisiana appeared and answered in this case. Moreover, the record shows that attorneys representing both of the third parties were present and participated in all stages of the trial of this case, including oral argument before the court. They not only assisted the United States in its defense against plaintiffs' suit but interrogated witnesses on their own behalf. We recognize that this participation in the defense against plaintiffs' suit was made without waiving the jurisdictional objection asserted by Jefferson Parish Council, but both the Council

and the State have had their day in court and may not relitigate any of the issues of fact or law here decided on plaintiffs' claim.

As we pointed out in *Bowser,* our holding in this respect is based not only on the broad language of section 14(b) of the Contract Settlement Act but upon the general principles of law that are applicable in such situations. As the Supreme Court said in Souffront v. Compagnie Des Sucreries, 217 U.S. 475, 487, 30 S.Ct. 608, 54 L.Ed. 846 (1910):

> * * * The case is within the principle that one who prosecutes or defends a suit in the name of another to establish and protect his own right, or who assists in the prosecution or defense of an action in aid of some interest of his own, and who does this openly to the knowledge of the opposing party, is as much bound by the judgment and as fully entitled to avail himself of it as an estoppel against an adverse party, as he would be if he had been a party to the record.

*See also* Richfield Oil Corp. v. United States, 138 Ct.Cl. 520, 523, 151 F.Supp. 333, 335 (1957).

DAVIS, Judge (concurring).

The only part of the court's opinion in which I do not join is Part IV, repeating the recent holding in Bowser, Inc. v. United States, 190 Ct.Cl. ——, 420 F.2d 1057 (Jan. 1970). Following the theory of my separate views in that case, I also concur in the result here on the ground that, as in *Bowser,* the proper exercise of our discretion calls for a refusal to determine the defendant's claim against the Jefferson Parish Council. As the Chief Judge's opinion indicates, that party has raised substantial issues, independent of plaintiffs' claim, as to its liability under the "save harmless" agreement. These separate questions can now appropriately be tried out in another tribunal if the Government still wishes to proceed against the Parish Council.