James W. BUTLER

v.

The UNITED STATES.

No. 55–74.

United States Court of Claims.

March 23, 1977.

---

James W. Butler, pro se.

Thomas L. McKevitt, Washington, D.C., with whom was Asst. Atty. Gen. Peter H. Taft, Washington, D.C., for defendant. Dennis A. Dutterer, Washington, D.C., of counsel.

Before NICHOLS, KUNZIG and BENNETT, Judges.

## OPINION

PER CURIAM:

This case is before the court on plaintiff's exceptions to a recommended decision of Senior Trial Judge Mastin G. White, which he has submitted in accordance with Rule 134(h). After briefing and oral argument, the court agrees with the said recommended decision, as hereinafter set forth and affirms and adopts the decision as the basis for its judgment in this case.

The suit is to recover the sum of $30,000 which plaintiff paid to the Department of Housing and Urban Development (HUD) as earnest money in support of his bid to purchase certain real property. The plaintiff was the highest bidder, but refused to go to settlement, alleging that the prospectus contained misleading information. As stated in the opinion, the major contention was that plaintiff regarded as HUD's best estimate of future annual taxes on the property, a prospectus figure of $7,494.90, which actually reflected the taxes as temporarily reduced during a period when the premises were vacant and severely vandalized. We agree with the Trial Judge that the prospectus was not false or misleading and instead, as to the taxes, made the real situation clear.

However, in his briefs and oral argument before us, plaintiff also pointed out other defects in the prospectus and bid package furnished him. The prospectus included a figure of $612 .per month set down as the cost of guard services. On HUD Form 9657, the bid package included a total operating cost figure of $49,625, not broken down. A worksheet discovered in HUD files shows that various cost elements, not including the guard services, were added to make this figure. A bidder might have inferred that it included at least, among others, all the cost elements mentioned in the prospectus, whereas a statement of all cost elements foreseen by HUD would have added the predicted guard services cost at

least to the $49,625 figure. There were also minor discrepancies between the worksheet and the prospectus with respect to the costs of electricity and refuse removal.

The findings clearly set forth plaintiff's mistaken belief that the actual lowered tax figures before rehabilitation were HUD's estimate of future taxes, plaintiff's discovery of the mistake before closing, and his refusal to close in consequence. The record as it comes before us is barren of any corresponding finding as to how he weighed the $49,625 figure, except that he read and executed the form No. 9657, which included it. As the prospectus cost figures totalled only $21,489.06, the higher figure might have taught caution in interpreting the prospectus as readily as it might have fostered the belief that $49,625 was all. In the circumstances, and in face of HUD's express disclaimer of any warranty as to the accuracy of information furnished, we are unable to say that the potentially misleading treatment of the guard services cost, or the minor discrepancies above mentioned, justify us in rejecting the Trial Judge's recommended decision. It will be understood that we are not awarding any accolades to HUD for its management of this transaction.

Accordingly, the plaintiff's exceptions are overruled and the petition is dismissed.

The Trial Judge's opinion follows. His fact findings are not printed, but are available to the parties.

## OPINION OF TRIAL JUDGE

WHITE, *Senior Trial Judge*: The plaintiff sues to recover the sum of $30,000, which he paid in November 1972 to the Department of Housing and Urban Development ("HUD") as an earnest-money deposit in support of his bid for the purchase of the Cedar Courts Apartments ("the apartments"), located in Memphis, Tennessee.

The apartments, which were acquired by HUD in 1969, are located approximately 2 miles from the downtown area of Memphis. They consist of 17 2-story buildings, containing a total of 114 2-bedroom units, and a commercial building that contains office space and a large self-service laundry.

When HUD acquired the apartments in 1969, they were vacant and uninhabitable, having been severely vandalized. By June 1, 1972, however, the apartments were in good condition, as they had been rehabilitated and repaired by HUD at a cost of $230,000 during the period of HUD's ownership.

The plaintiff's bid for the purchase of the apartments was submitted in response to an invitation for bids which HUD issued on or about September 29, 1972, through the publication of a document entitled "This is Your Prospectus and Invitation to Bid" ("the prospectus"). The prospectus stated that sealed bids for the purchase of the apartments would be received and would be publicly opened at 11 a. m. on November 29, 1972. The prospectus also stated that the minimum acceptable bid would be $700,000.

The plaintiff's bid was submitted within the time specified; it was in the amount of $757,000; and, as previously indicated, it was supported by a $30,000 earnest-money deposit.

On December 12, 1972, the plaintiff's bid for the purchase of the apartments was accepted by HUD, and the Secretary of HUD executed the formal contract of sale and purchase which the plaintiff had previously executed in connection with the submission of his bid. Some 3 days later, on December 15, 1972, the plaintiff was informed by HUD that the sale of the apartments must be closed by midnight of February 12, 1973.

The plaintiff, however, later refused to go to settlement under the contract for the sale and purchase of the apartments. HUD then, on February 20, 1973, declared the contract to be terminated and the plaintiff's earnest-money deposit of $30,000 to be forfeited as liquidated damages for the plaintiff's failure to perform the contract.

The plaintiff's refusal to consummate the contract was based upon the plaintiff's conclusion that the prospectus contained misleading information on the subject of taxes.

Under the heading of "Approximate Expenses," the prospectus listed certain expense items, with an amount for each item. One of the items was "Taxes Per Yr.," and the amount set out for this item was $7,494.90. The plaintiff testified, in effect, that he regarded the figure of $7,494.90 as HUD's best estimate as to what the annual taxes on the apartments would be for the purchaser, although he believed there might be an error of from 10 to 20 percent in HUD's estimate and, to that extent, he took the possibility of an annual tax expense greater than $7,494.90 into account in computing his bid for the purchase of the apartments.

After the plaintiff had submitted his bid and entered into the contract for the purchase of the apartments, he learned for the first time that on September 30, 1969, HUD had requested the Shelby County Assessor of Property (the apartments are located in Shelby County, Tennessee) to reassess the apartments and reduce the then-current appraised value from $500,000 to $301,000, on the ground that the property was severely vandalized, uninhabitable, and vacant; that on October 21, 1969, the Shelby County Assessor of Property had informed HUD that the apartments had been reassessed downward in accordance with HUD's request; and that, on the basis of the rehabilitation of the apartments during 1971–72, it was expected by the management broker in charge of the apartments that the apartments would be reassessed upward and the real estate taxes on the apartments for 1973 would probably amount to about $17,500. (The apartments actually were reassessed later, as expected, and the real estate taxes for 1973 amounted to $17,711.20.)

Because of the discrepancy between the figure of $7,494.90 for taxes set out in the prospectus under the heading of "Approximate Expenses" and the figure of $17,500 which the plaintiff learned would probably be the approximate amount of the real estate taxes on the apartments for 1973, the plaintiff refused to close the sale of the apartments by midnight of February 12,

1973, as required by the provisions of the contract between HUD and the plaintiff. Thereafter, HUD forfeited the $30,000 earnest-money deposit which the plaintiff had made in support of his bid for the purchase of the apartments, thus setting the stage for the present litigation.

In connection with the matter of taxes on the apartments, the evidence in the record shows that HUD in June 1972, prior to the publication and issuance of the prospectus, had prepared an income analysis and appraisal relative to the apartments on FHA Form No. 2264; that this calculation was made in order to determine the minimum acceptable bid price for the apartments ($700,000 was the figure determined by HUD); that the calculation included an estimate of the annual expenses that would probably be incurred by the purchaser of the apartments; and that, in the computation, HUD estimated that the annual expenses would include real estate taxes in the amount of approximately $13,125.

HUD's action in listing the figure of $7,494.90 for annual taxes in the prospectus under the heading of "Approximate Expenses," when HUD's actual estimate at the time concerning the amount of future real estate taxes on the apartments was $13,125 per year, would seem on superficial consideration to have been the sort of misleading information which, if relied on by the successful bidder, would justify the latter in rescinding the contract for the purchase of the apartments and demanding the return of his earnest-money deposit.

The figure of $7,494.90 in the prospectus, however, was followed by a footnote reference designated as "(2)," and this footnote stated as follows:

(2) 1971–72 Real Estate Taxes: City $3,205.65; County $4,289.25. The property has not been reassessed by the local taxing authorities since the completion of the rehabilitation.

Also, the prospectus contained the following additional statement that should be considered in this connection:

Project was held vacant pending completion of a rehabilitation program by

HUD. Rental program commenced June 1, 1972. * * *

The prospectus material quoted in the two immediately preceding paragraphs clearly informed prospective bidders that the figure of $7,494.90 for annual taxes did not represent an estimate concerning future taxes but, rather, was the actual total of the annual city and county real estate taxes assessed against the apartments for the years 1971 and 1972; that such taxes had been assessed against the apartments at a time when the apartments were vacant and in the process of being rehabilitated; and that, although the rehabilitation program had been completed and the apartments were ready for rental by June 1, 1972, the apartments had not been reassessed by the local taxing authorities since the completion of the rehabilitation. This should have been sufficient, in my opinion, to alert an ordinarily prudent investor, who was considering the submission of a bid for the purchase of the apartments, regarding the advisability of investigating the tax situation prior to the submission of his bid.

Anyone interested in investigating the tax situation relative to the apartments could have examined the public records of the Shelby County and Memphis taxing authorities. Such an investigation would have revealed that for the year 1969 the assessed valuation of the apartments was $250,000 (representing 50 percent of the fair market value of $500,000), and the city and county real estate taxes for 1969 totaled $11,475; that on October 21, 1969, pursuant to a request (and the only reasonable inference was that the request was submitted by or on behalf of HUD as the owner), the apartments were reappraised for the tax year 1970; that the property had been inspected in connection with the reappraisal and had been found "to be completely vacant and boarded up," with the "Interior damaged badly and all windows broken out"; that the assessed valuation for 1970 was reduced from the previous figure of $250,000 to $150,500 (representing 50 percent of the reappraised value of $301,000); that on the basis of the reappraisal and reassessment, the city and county taxes on the apartments were reduced from $11,475 per year to $7,494.90 per year; that on February 15, 1971, a building permit was obtained for the renovation of the apartments at an estimated cost of $100,000; and that the assessed valuation of $150,500 was still in effect when the prospectus was issued. Also, as previously indicated, the prospectus itself informed prospective bidders that the renovation program had been completed and the rehabilitated apartments were ready for rental by June 1, 1972, but that the local taxing authorities had not reassessed the apartments since the completion of the renovation program.

In view of (1) the information which was set out in the prospectus itself, and (2) the information which was readily available in the public records of the local taxing authorities, the conclusion seems inescapable that the plaintiff was careless in concluding, without looking into the matter further, that the real estate taxes on the apartments for 1973 would not be more than 10 or 20 percent greater than the figure of $7,494.90 set out in the prospectus as the total annual amount of the city and county real estate taxes for 1971 and 1972.

As this court said in *Snyder Corp. v. United States*, 68 Ct.Cl. 667, 676 (1930):

* * * This court will not relieve a party from the consequences of his own inattention and carelessness. Where the means or knowledge are at hand and open to inspection, if the purchaser does not avail himself of these means and opportunities he will not be heard to say that he has been deceived by the vendor's misrepresentations. * * *

■ Although the plaintiff's petition relies only on the alleged misrepresentation concerning taxes in the prospectus as the basis for recovery, the plaintiff's brief appears to place some reliance also on the circumstance that the prospectus, under the heading of "Approximate Expenses," did not include certain estimated expenses which HUD took into account in computing the minimum bid price that would be regarded as acceptable.

With respect to this point, it should be mentioned that the plaintiff, in addition to receiving the prospectus, also received from HUD and considered, prior to the submission of his bid, a "bid package" which included (among other things) a HUD Form No. 9657, and the HUD Form No. 9657 contained a statement to the effect that HUD estimated "the cost of operation, maintenance, taxes and reserve for replacement deposits" to be $49,625. The $49,625 figure was the total of the estimated expenses which HUD had used in computing the amount of the minimum acceptable bid, and the statement in HUD Form No. 9657 put prospective bidders on notice that the expenses mentioned in the prospectus under the heading of "Approximate Expenses," totalling $21,489.06, did not constitute an exclusive list of all the expenses which the purchaser might reasonably expect to incur in operating the apartments.

Furthermore, it should have been fairly obvious to a knowledgeable investor that the expenses listed in the prospectus did not represent an all-encompassing list. The listed expenses were taxes, utilities, guard service, garbage removal, and reserve for replacement deposits. The list did not include such things as manager's salary, employees' wages, decorating, repairs, insurance, and advertising, all of which were reasonably to be expected as expenses involved in the operation of an apartment complex containing 114 residential units. Consequently, it was not reasonable of the plaintiff to believe that the expenses listed in the prospectus, totalling $21,489.06 and covering only the items of taxes, utilities, guard service, garbage removal, and reserve for replacement deposits, represented all the expenses that would be involved in the operation of the apartments.

For the reasons previously stated in this opinion, the plaintiff is not entitled to recover and the petition is dismissed.