James LaFONT, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 37–89C.

United States Claims Court.

Aug. 25, 1989.

Richard G. Duplantier, Jr., New Orleans, La., attorney of record, for plaintiff.

William K. Olivier, Washington, D.C., with whom were Asst. Atty. Gen. John R. Bolton, Director David M. Cohen, and Asst. Director Thomas W. Petersen, for defendant. Richard Frank and Lorraine Caffery, of counsel.

## OPINION

LYDON, Senior Judge:

Plaintiff, an oyster grower, seeks to recover damages, pursuant to 28 U.S.C. § 1497 (1982),[1] arising from dredging operations by the United States Army Corps of Engineers (Corps). The Corps had contracted to improve and maintain the navigability of the Barataria Bay Waterway in the State of Louisiana. During the course of contract performance plaintiff's leased oyster beds were allegedly damaged and/or destroyed.

Defendant has moved for dismissal of the complaint on the ground that plaintiff's damage claim is barred by the statute of limitations, 28 U.S.C. § 2501 (1982).[2]

After consideration of the submissions of the parties and oral argument presented by the parties, the court concludes that defendant's motion should be granted.

---

1. Section 1497 provides that "The United States Claims Court shall have jurisdiction to render judgment upon any claim for damages to oyster growers on private or leased lands or bottoms arising from dredging operations or use of other machinery and equipment in making river and harbor improvements authorized by an Act of Congress."

2. Section 2501 provides in pertinent part that "Every claim under § 1497 of this title shall be barred unless the petition [complaint] thereon is filed within two years after the termination of the river and harbor improvements operations on which the claim is based."

*Facts*

Plaintiff is the owner of a leasehold interest, identified as Oyster Lease Number 28514. This lease allowed plaintiff to cultivate and/or harvest oysters on the leased waterbottom adjacent to the Barataria Bay Waterway. The lease, encompassing sixty-six acres in East Champagne Bay, Jefferson Parish, Louisiana, was obtained by plaintiff from the State of Louisiana Department of Wildlife and Fisheries on July 18, 1986. The lease was to expire on January 1, 2001. The rent plaintiff paid for the lease was $2.00 per acre per year, or $132 per year.

The Barataria Bay Waterway, a Corps river and harbor project, is a thirty-seven mile channel from Bayou Villars to Grand Isle, Louisiana. On March 10, 1960, the Jefferson Parish Council passed Resolution No. 1076 in which it acknowledged that the entire Corps project was within the territorial jurisdiction of the Jefferson Parish Council. The Barataria Bay Waterway was designed to provide an adequate navigation channel for vessels engaged in the movement of crude oil, supplies, and equipment for the drilling of offshore and inshore oil wells, for the shrimp and oyster industries and for pleasure fishing and yachting. Construction of the Waterway was authorized by the River and Harbor Act of 1958, Pub.L. No. 85–500, 501, 72 Stat. 297, 298.

On April 15, 1986, the Corps contracted (Contract No. DACW29–86–C–0076) with the Great Lakes Dredging and Dock Company (Great Lakes) for the maintenance dredging of miles 15.7 to 1.0 of the Barataria Bay Waterway in Jefferson Parish, Louisiana to improve and maintain the navigability of the Waterway. Work commenced on the project on May 12, 1986. Plaintiff's leasehold was adjacent to miles 5.5 to 5.8 on the Barataria Bay Waterway.

A Daily Log of Construction, covering the period up to October 26, 1986, indicated that the probable date of completion of the contract was December 1, 1986. A "Disposition Form" dated January 20, 1987 from the Corps' New Orleans Office of the Corps' Contract Construction Division stat-

ed, with reference to the Great Lakes contract, that "a final inspection was made by an authorized representative of the contracting officer on 17 Jan. 87; all work was found to be completed in accordance with the contract plans and specifications and is accepted as of 16 Jan. 87."

Plaintiff, in his complaint, alleges that in January 1987, while performing dredging operations on the Barataria Bay Waterway, Great Lakes negligently deposited dredged spoil from the Waterway on plaintiff's leased waterbottom thereby destroying the waterbottom of his leasehold interest for the cultivation of oysters in the future. It is to be noted that plaintiff does not have to establish negligence by the Corps. He only must show a factual causation between the Corps' dredging operations and the damages to his leased oyster beds. *Petrovich v. United States*, 190 Ct.Cl. 760, 765, 421 F.2d 1364, 1366 (1970). However, plaintiff is not entitled to damages caused by other forces, *e.g.*, hurricane, oyster-produced mud, starfish, etc. *See H.J. Lewis Oyster Co. v. United States*, 123 Ct.Cl. 358, 370, 107 F.Supp. 570 (1952). Nor can plaintiff recover speculative damages. *Id.* at 371–72, 107 F.Supp. 570; *Schroeder Besse Oyster Co., Inc. v. United States*, 95 Ct.Cl. 729, 740 (1942).

On April 22, 1987, plaintiff filed a claim for $66,000 with the Corps. This claim figure was ostensibly based on a $1000 per acre analysis (sixty-six acres × $1000). The claim was received by the Corps' Office of Counsel on May 8, 1987. In his claim, plaintiff stated that the dredge Conoco was digging out the channel to deepen it and was dumping spoil on his oyster lease. He advised that if the spoil had been dumped on the west-side instead of the east-side there would have been no damage. Plaintiff in his claim stated his oyster lease suffered heavy damage with silt such that the lease cannot be used for oyster cultivation.

In his brief, but not in his complaint, plaintiff alleges that he thereafter negotiated with the Corps regarding settlement of his claim. He also alleges in his brief that the Corps represented to him that the

Corps was the appropriate branch for resolution of such claims. No affidavit by plaintiff accompanied his brief.

On August 31, 1988, the New Orleans District Office of the Corps informed plaintiff that it was advised that a recent District Court decision held that the United States Claims Court had exclusive jurisdiction over oyster damage claims pursuant to 28 U.S.C. § 1497. A copy of that unreported decision was sent to plaintiff. As a result, the Corps informed plaintiff it had no authority to process his claim and accordingly was returning his claim and documents, regretting "any inconvenience this has caused you."

Subsequent to receipt of the Corps' August 31, 1988 letter, plaintiff retained his present counsel.

Plaintiff's complaint was "filed" in this court on January 25, 1989. In his complaint, plaintiff seeks to recover $132,000. Ostensibly, this claim figure is based on a $2,000 per acre analysis.

### Discussion

Defendant's motion to dismiss, based on lack of subject matter jurisdiction, is predicated on the following facts.[3] The contract with Great Lakes was completed and accepted by the Corps on January 16, 1987, thus terminating the river and harbor improvements on which plaintiff's claim is based. Since plaintiff's complaint was filed with the court on January 25, 1989, the two-year statute of limitations applicable to oyster grower claims bars his damage claim in this court.

It is settled that the statute of limitations, 28 U.S.C. § 2501, begins to run when all the events have occurred which fix the liability of the United States and entitle the claimant to institute an action in this court relative thereto. *Japanese War Notes Claimant's Ass'n, Inc. v. United States (JAPWANCAP, Inc.)*, 178 Ct.Cl. 630, 637, 373 F.2d 356, 358 (1967), *cert. denied* 390 U.S. 975 (1968). In this case, 28 U.S.C. § 2501 sets forth the "event" which triggers the running to the limitations period, *i.e.,* "two years after the termination of the river and harbor improvements operations on which the claim is based." The plain meaning of these words of the statute allows for no other conclusion and plaintiff does not argue otherwise. Without more, defendant has made a rather persuasive argument.

Plaintiff, however, offers three arguments in opposition to defendant's position. First, plaintiff asserts that the filing date of his complaint should be deemed to be January 18, 1987 and not January 25, 1987. Second, plaintiff challenges defendant's assertion that the contract in question was completed on January 16, 1987. Third, plaintiff argues that, in any event, the statute of limitations should be deemed tolled while his damage claim was before the Corps.

■ In his memorandum in opposition to defendant's motion to dismiss, plaintiff established that his counsel sent a letter dated January 18, 1987 to the Clerk enclosing an <u>unsigned</u> complaint together with his Application for Admission to the Bar of this court. This letter, with the <u>unsigned</u> complaint, was received by the Clerk's office on January 19, 1989, and so stamped as having been received on that date, and was thereafter returned to plaintiff's attorney with, *inter alia,* a notation that the complaint was "<u>not signed</u>". Plaintiff's <u>signed</u> and corrected complaint was thereafter received by the Clerk's office on January 25, 1989 and that date was stamped on the complaint as the "Filed" date. (all underscoring above supplied.)[4]

---

3. In ruling on a motion to dismiss for lack of subject matter jurisdiction under RUSCC 12(b)(1), the court may consider evidentiary matters outside the pleadings, and decide for itself factual issues determinative of the court's jurisdiction over the matter before it. *Indium Corp. of America v. Semi-Alloys, Inc.,* 781 F.2d 879, 883–84 (Fed.Cir.1985); *Fidelity and Deposit Co. of Maryland v. United States,* 2 Cl.Ct. 137, 142, 145 (1983).

4. RUSCC 3(b) provides in pertinent part "... the [filing] date stamped on the complaint shall be final and conclusive evidence of the date on which a complaint was filed." RUSCC 3(b)(2)(A) provides that "[A] party plaintiff who contends that the effective date of his complaint

RUSCC 11 provides in pertinent part that "[E]very pleading ... of a party represented by an attorney shall be signed by the attorney of record in his individual name.... If a pleading ... is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader...."

Under the circumstances outlined above, the court concludes that justice and reason support the issuance of a corrective order changing the filing date of the complaint in this case from January 25, 1989 to January 19, 1989, the date when the January 18, 1989 letter enclosing the unsigned complaint was received, and so stamped on said letter in the Clerk's office. An allowance of next day delivery after mailing date as the filing date is deemed to be "in the ordinary course of the mail." See RUSCC 3(b)(2)(C).

Such a holding does not prejudice or mislead defendant, and can reasonably be deemed to fit within the mold of the normal practice of the Clerk's office in cases where the statute of limitations may or does have application. Generally, had the Clerk of the court realized that the two-year statute of limitations was of some moment in this case he most probably would have retained the unsigned complaint and informed counsel of the deficiencies and thus provide him with an opportunity to correct the same within a reasonable period of time. Upon receipt of the corrected complaint, the Clerk would then stamp it as filed as of the date, here January 19, 1989, the Clerk's office received the unsigned complaint. *See Ross v. U.S.*, 16 Cl.Ct. 378, 381, 382–84 (1989). Further, the holding of this court in *Ross* clearly supports the filing date corrective action taken herein.[5]

Having concluded that the complaint was filed on January 19, 1989, the next step is to determine when the dredging operations on which plaintiff's claim is based were terminated.

Defendant relies on an internal Disposition Form, dated January 20, 1987, to establish the termination of the operations which gave rise to plaintiff's claim. In this Form, the Corps' Resident Engineer informed higher Corps authority that a final inspection was made of the work site on January 17, 1987 and "all work was found to be completed in accordance with the contract plans and specifications, and is accepted as of 16 Jan 87." In addition, defendant proffered a copy of the "Final" Daily Log of Construction (Dredging) dated January 16, 1987 and the affidavit of the Corps' project construction representative in support of its contention that Great Lakes completed all dredging work under the contract on January 16, 1987 and that no further dredging under the contract was done thereafter. Plaintiff made no effort to provide information, by document or affidavit, to counter the assertions contained in these materials.

Defendant argues that for purposes of section 2501 the termination of the dredging operations by Great Lakes under Contract No. DACW29–86–C–0076, on which plaintiff's claim is based, occurred by final acceptance of the work on January 16, 1987. Plaintiff's response is brief. He argues that the date of the Disposition Form, January 20, 1987, constitutes the termination date of the dredging operations under section 2501, because, says plaintiff, that is when the final disposition of the contract was documented by the Corps. Further, plaintiff continues, the Corps, rep-

---

should properly be a date earlier than that shown by the Clerk's records may seek a corrective order from the court by means of a motion." Plaintiff has not filed such a motion specifically addressing the correctness of the Clerk's records in reliance on RUSCC 3(b)(2)(B). However, the court will treat plaintiff's "Memorandum in Opposition to Defendant's Motion to Dismiss" as such a motion under RUSCC 3(b)(2)(A), (B).

5. In returning the January 18, 1989 letter, with the unsigned complaint to plaintiff's attorney, the Clerk's office also noted other deficiencies, *i.e.*, four additional copies of the complaint were needed; the caption of the complaint had to be corrected as to the defendant—the United States and not the Corps of Engineers; and a notation that under RUSCC 81(d)(1) there could only be one attorney of record for a party in any case at any one time. These deficiencies were thereafter promptly remedied by plaintiff. *See Ross* at 382.

resented to plaintiff that the project was not completed until January 20, 1987. Plaintiff does not identify the Corps personnel involved.[6]

As presented by the parties, it seems clear that the dredging operations were terminated on January 16, 1989. The final inspection was conducted on January 17, 1989 and the work accepted as of January 16, 1989. The fact that these events were the subject of a later writing on January 20, 1989 does not alter the fact that all work on the project was terminated on January 16, 1989. Reasonably construed, the January 20, 1987 Disposition Form merely advised another Corps office that the contract work was subjected to a final inspection and was accepted as completed on January 16, 1989. There is no basis for concluding that the Disposition Form was more than a mere informational transmission.

The dredging work under Contract No. DACW29–86–C–0076 was completed and accepted by the Corps on January 16, 1987, and thus terminated the river and harbor improvements operations on which plaintiff's claim is based. Since plaintiff's complaint was not filed in this court until January 19, 1989, his claim is barred by the two-year statute of limitations. Under the circumstances of this case, the statutory period of limitations commenced at the time of completion and acceptance of the dredging work. *Nager Elect. Co. v. United States*, 177 Ct.Cl. 234, 242, 368 F.2d 847, 582–83 (1966). No other factors have been advanced by the parties which would require deviation from adherence to this general rule.

■ The statute of limitations is jurisdictional in this court. The two-year statute of limitations set forth in section 2501 is part of the waiver of sovereign immunity to suit in this court and thus must be strictly construed. *Cosmic Constr. Co. v. United States*, 697 F.2d 1389, 1390 (Fed. Cir.1982); *Williams v. United States*, 3

Cl.Ct. 1, 2 (1983). Inherent in section 2501 is the obligation that claims otherwise justifiable and justiciable will be denied because suit was not brought in time. *Friedman v. United States*, 159 Ct.Cl. 1, 28, 310 F.2d 381, 398 (1962), *cert. denied* 373 U.S. 932, 83 S.Ct. 1540, 10 L.Ed.2d 691 (1963). The mere existence of a judicial remedy does not, in itself, ensure that a suit can always be maintained. *Id.*

■ Plaintiff argues in his brief that the statute of limitations did not begin to run until he discovered the claim, *i.e.*, until he discovered the damages to his oyster lease. Plaintiff obtained his lease in July 1986 at the time dredging was taking place in the Barataria Bay Waterway. Plaintiff alleges the dredging intrusion on his leasehold occurred in January 1987 and he did not discover the damages done until two to three weeks after it occurred, sometime in the first week of February 1987. As a general rule, ignorance of a claim is not enough to toll the statute of limitations. *Comacho v. United States*, 204 Ct.Cl. 248, 260, 494 F.2d 1363, 1370 (1974).

There is no allegation by plaintiff that the Corps concealed the dredging operations so that plaintiff was unaware of its existence. Dredging in the Waterway was an obvious act and one undoubtedly known to plaintiff both before and after he entered into his lease in the Waterway. Indeed, at oral argument it was stated that the spoil deposits on plaintiff's leased acreage was, in places, above the waterline and thus clearly visible to the naked eye. There is also no allegation that the existence of damages was inherently unknowable on January 16, 1987. Indeed, given the nature of dredging operations, plaintiff was, or should have been, on inquiry that he had a potential claim on or before January 16, 1987. *See Braude v. United States*, 218 Ct.Cl. 270, 273–74, 585 F.2d 1049, 1051–52 (1978); *JAPWANCAP, Inc., supra*, 178 Ct.Cl. 630, 634–35, 373 F.2d 356, 358–59 (1967).

---

**6.** Representations by unidentified government employees under such circumstances carries no evidentiary weight for it deprives defendant of an opportunity to dispute it. *See Boraiko v.*

*United States*, 146 Ct.Cl. 814, 817 (1959). *See also Haber v. United States*, No. 532–84T, 17 Cl.Ct. 496, 504–05 (1989).

Plaintiff's argument that he was unaware that he had a claim on or about January 16, 1987 is, under the circumstances, insufficient to toll the statute of limitations. Indeed, the cases relied on by plaintiff in support of his argument do not support it. In *Oceanic S.S. Co. v. United States,* 218 Ct.Cl. 87, 586 F.2d 774 (1978), the court rejected a claimant's contention that ignorance of its claim tolled the limitations period. Plaintiff obviously "knew of the potential for a claim" and it cannot be said that the claim on January 16, 1987 "was inherently unknowable." *Id.,* 218 Ct.Cl. at 108–10, 586 F.2d at 786–87. *See also Welcker v. United States,* 752 F.2d 1577, 1580–81 (Fed.Cir.1985), *cert. denied* 474 U.S. 826, 106 S.Ct. 83, 88 L.Ed.2d 68 (1985). In *Baskett v. United States,* 8 Cl.Ct. 201, 230–31 (1985), the court, in determining when a cause of action arose, focused on the foreseeability of damages resulting from defendant's navigational activity, *i.e.,* the circumstances were such that damage was a foreseeable future event or that the alleged effects of the actions, the dredging, were fully known by the claimant. In this case, dredging damages to oyster beds was certainly foreseeable. The fact that plaintiff was not aware of the full extent of the damages until three weeks after the project was completed does not toll the statute of limitations. *JAPWANCAP, Inc., supra,* 178 Ct.Cl. at 634, 635, 373 F.2d at 358–59. *See also Braude, supra,* 218 Ct.Cl. at 278, 585 F.2d at 1051–52.

Plaintiff next argues that the statute of limitations was tolled while his claim was before the Corps. Plaintiff recognizes that the filing of a permissive administrative claim does not toll the running of the statute of limitations. *See Soriano v. United States,* 352 U.S. 270, 273, 77 S.Ct. 269, 271, 1 L.Ed.2d 306 (1957); *Comacho, supra,* 204 Ct.Cl. at 259–60, 494 F.2d at 1369. However, he contends that, under the circumstances, it was mandatory that he file his claim with the Corps because the Corps represented—no Corps personnel are identified—*see* n. 5, *supra,* that claims for damages to oyster leases were required to be filed through the Corps. The short answer to this argument is that 28 U.S.C. § 1497, which was on the books in 1987, conferred jurisdiction on the Claims Court, not the Corps, to hear and decide oyster damage claims. *See Soriano* at 274–75. Further, plaintiff continues, his oyster claim is really a tort claim and 28 U.S.C. § 2675 requires that such a tort claim must first be presented to an appropriate federal agency before a District Court suit could be filed. Again, 28 U.S.C. § 1497, conferred oyster damage claim jurisdiction on the Claims Court and not the District Court and recourse to the Claims Court was not dependant on filing a claim with the Corps.[7] It is well established that this court does not have jurisdiction over tort claims. *See* 28 U.S.C. § 1491(a)(1); *Shanbaum v. United States,* 1 Cl.Ct. 177, 179, n. 3 (1982). In any event, as indicated previously, negligence is not required to support an oyster damage claim under section 1497. *See* p. 839, *supra.* Plaintiff's tort analogy is unpersuasive.

Finally, plaintiff argues that equity dictates that the statute of limitations be deemed tolled while the claim was before the Corps because the Corps waited approximately one year and four months before responding to his claims. Plaintiff ignores the fact that negotiations for settlement were taking place, according to plaintiff, during this period. It was only when the Corps was apprised of the fact that it had no authority to handle oyster damage claims did it return plaintiff's claim application. There was nothing dilatory or inequitable about the Corps' action under the circumstances.[8]

---

7. If, on the other hand, Corps consideration of the matter is required before recourse to this court, then the court would be inclined, if not required, to allow for exhaustion of this available administrative remedy, which the Corps felt it could not provide.

8. Plaintiff states he secured counsel when the Corps advised him in August 1987 that it could not act on his claim. *See* n. 8, *supra.* Since the Corps sent him a copy of the District Court's decision noting that § 1497 conferred exclusive jurisdiction on the Claims Court for oyster damages claims, his counsel, aware of § 2501 and its

Plaintiff suggests an equitable tolling of the statute of limitations is appropriate in this case, citing *American Pipe and Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). However, the holding in *American Pipe* is inapposite to the facts in this case. In *American Pipe*, the Supreme Court held that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action.

In any event, plaintiff was not induced by the Corps from filing suit in this court, or because of fraudulent concealment by the Corps. Section 1497 was clear notice to plaintiff and others where oyster claims were to be filed and processed and such public notice militates against a finding of inducement[9] or concealment. The facts as alleged by plaintiff in his complaint and as alleged by counsel for plaintiff in his brief, accepting them as true for purposes of ruling on defendant's motion to dismiss, fail to show, by inference or otherwise, inducement or concealment by the Corps relative to the institution of suit in this court on or before January 19, 1987 by plaintiff regarding his section 1497 claim. Further, the limitations period set out in section 2501 is jurisdictional, as indicated previously, and, as such, is not subject to an equitable tolling, absent capricious inducement or fraudulent concealment by the Corps, which factors are not present in this case. *See Richard E. Wilson Corp. v. United States*, 4 Cl.Ct. 171, 173 (1983). At best, one could view the Corps' actions as manifesting administrative confusion over the processing of oyster damage claims, but "[M]ere administrative confusion, without more, does not constitute fraudulent concealment." *Collins v. United States*, 14 Cl.Ct. 746, 752 (1988).

### Conclusion

The clerk is directed to correct the records in this case to show that the complaint was filed on January 19, 1989. This correction shall be made *nunc pro tunc*. For reasons discussed above, defendant's motion to dismiss plaintiff's claim as being barred by the statute of limitations is granted. The clerk is directed to enter judgment dismissing plaintiff's complaint. No costs.

---

two-year statute of limitations had some four months to file suit in the Claims Court to avoid the limitations problem. It would not be equitable to relieve plaintiff and counsel from the consequences of their own inattention to the existence of § 1497 and § 2501 under the circumstances. *See Butler v. United States*, 213 Ct.Cl. 379, 386, 551 F.2d 286, 290 (1977). The existence of a statute of limitations implies that one will act with reasonable dispatch relative to his interest and potential claims. *Ewald v. United States*, 14 Cl.Ct. 378, 381 (1988).

9. Assuming arguendo, a misrepresentation by the Corps that it could process administratively plaintiff's claim, such would have been a misrepresentation of law. Even under these circumstances, plaintiff's assertion is without merit. Both the Corps and plaintiff are charged with knowledge of the law, *i.e.*, the existence of § 1497. *Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 385, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). *See also Heckler v. Community Health Servs. of Crawford County, Inc.*, 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984); *Mayer v. United States*, 201 Ct.Cl. 105, 113–14 (1973); *Mills v. United States*, 187 Ct.Cl. 696, 697, 699–700, 410 F.2d 1255, 1257–58 (1969); *Sanders–Midwest, Inc. v. United States*, 15 Cl.Ct. 345, 350 (1988). Ignorance of one's legal rights is not a basis for tolling the statute of limitations. *Dion v. United States*, 137 Ct.Cl. 166, 167 (1956).